**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

BRANIMIR CATIPOVIC,

          Plaintiff,

vs.

MARK TURLEY, RONALD FAGEN,
and FAGEN, INC.,

          Defendants.

No. C 11-3074-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS'
MOTIONS TO DISMISS**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**................................................................**3**
    A.    *Factual Background* ............................................... 3
    B.    *Procedural Background* ......................................... 8

II.   **LEGAL ANALYSIS** ................................................. **11**
    A.    *Turley's Motion To Dismiss* ................................. 11
        1.    *Arguments of the parties*................................ 11
        2.    *Applicable standards*.................................... 13
            a.    *Principles of personal jurisdiction* ........... 13
            b.    *"General" personal jurisdiction*.............. 14
            c.    *"Specific" personal jurisdiction*.............. 15
            d.    *The role of contracts in the personal jurisdiction analysis*.................................. 16
            e.    *Rule 12(b)(2) standards for dismissal for lack of personal jurisdiction*........................ 18
        3.    *Application of the standards* ........................ 20
        4.    *Summary*.................................................... 22
    B.    *The Fagen Defendants' Motion To Dismiss*................. 23
        1.    *Dismissal for improper venue*........................ 23
            a.    *Arguments of the parties* ...................... 23
            b.    *Applicable standards* .......................... 25
               i.    *The applicable venue statute*............... 26

     *ii.* *Venue based on § 1391(a)(2)* ............................. 27

     *iii.* *Standards for dismissal for improper venue* .......... 29

   *c.* *Application of the standards* .................................. 32

     *i.* *Venue with Turley present* ............................... 33

     *ii.* *Venue with Turley absent* ................................ 33

   *d.* *Summary* ............................................................. 36

 *C.* *Failure To State A Claim* ...................................... 37

  *1.* *Arguments of the parties* ............................................. 37

  *2.* *Analysis* ..................................................................... 39

   *a.* *Applicable standards* .......................................... 39

   *b.* *Application of the standards* .................................. 42

     *i.* *Elements of the claim* .................................... 42

     *ii.* *Pleading of the claim* .................................... 44

     *iii.* *The Fagen Defendants' further challenges* ........... 45

   *c.* *Summary* ............................................................. 47

*III.* *CONCLUSION* ................................................................. 47

A former Iowa resident seeks to recover damages for breach of contract and unjust enrichment from an Irish citizen, and damages for unjust enrichment from a Minnesota citizen and a Minnesota company, arising from the failure of an alleged partnership to develop ethanol production facilities in Eastern Europe. The Irish defendant has moved to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction over him, and the Minnesota defendants have moved to dismiss pursuant to Rule 12(b)(3), for improper venue, and Rule 12(b)(6), for failure to state a claim on which relief can be granted. Thus, the pending

motions turn, at least in the first instance, on whether this forum is the proper one in which the plaintiff may bring his claims.

## I.    INTRODUCTION

### A.    Factual Background

Ordinarily, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  Thus, the factual background to a motion to dismiss must ordinarily be drawn solely from the plaintiffs' factual allegations.  *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("[M]atters outside the pleading may not be considered in deciding a Rule 12[(b)(6)] motion to dismiss").  However, on a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, if the court does not conduct a hearing, the court may consider the pleadings, any affidavits, and any exhibits supporting or opposing the motion.  *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011); *Pangaea, Inc. v. Flying Burrito, L.L.C.*, 647 F.3d 741, 745 (8th Cir. 2011).  Thus, where indicated, I have included pertinent facts from sources other than the pleadings in this statement of the factual background to the parties' dispute.

Plaintiff Branimir Catipovic is a naturalized citizen of the United States who was born in Croatia.  At the times relevant to this dispute, he was domiciled in Iowa, and working as a medical doctor specializing in internal medicine, allergy/immunology, at the Veteran's Administration Hospital (VA Hospital) in Mason City, Iowa.  In his Amended Complaint and a Declaration (docket no. 20-1) filed in resistance to one of the pending motions to dismiss, Catipovic avers that he is now domiciled in

3

Massachusetts. Defendant Mark Turley is a citizen of Ireland who, among other business activities, provides start-up capital to and invests in new business ventures. Defendant Roland Fagen is a citizen of and domiciled in Minnesota, and defendant Fagen, Inc., (FI), is a Minnesota corporation, headquartered in Granite Falls, Minnesota, engaged in commercial and industrial contracting and engineering services, focusing primarily on the ethanol plant industry. In the motion to dismiss by Fagen and FI, Fagen asserts that he is the executive vice president of FI.

Catipovic alleges that, while working as a medical doctor at the VA Hospital in Mason City in 2005-2006, he became aware of an ethanol production facility located in Mason City. He then began to study ethanol production, in part, because of his knowledge and understanding of the agricultural and environmental similarities between Iowa and Eastern Europe. In 2006, he toured the Mason City ethanol plant with its CEO, Walter Wendland. Catipovic alleges that he and Wendland recognized the potential to replicate the ethanol production success of the Mason City plant in Eastern Europe, so they gathered critical operational and financial information in Iowa, then they traveled to Croatia in July 2006. While in Croatia, they selected a site to build an ethanol production facility. They also worked with a sophisticated financial model designed to validate the viability of producing ethanol in Eastern Europe and created initial financial and business plans.

Catipovic alleges that, in the late fall of 2006, he and Wendland traveled to Granite Falls, Minnesota, to offer the opportunity to build ethanol plants in Eastern Europe to Fagen and FI. Catipovic and Wendland discussed with Fagen the financial viability of the project and shared the information that they had gathered. Fagen and FI allegedly agreed to work with Catipovic and Wendland. Catipovic alleges that, in April of 2007, he met with Turley in Ireland to try to obtain start-up capital for the project.

In May 2007, Turley met with Catipovic's brother, Hrvoje Catipovic, in Croatia to gain more information about the investment opportunity. Then, in June 2007, Turley, Catipovic, and Wendland met in Mason City, Iowa, to visit ethanol plants. During that visit, Catipovic alleges that the three entered into an agreement (the 2007 Agreement) to build ethanol plants in Eastern Europe, with the first plant to be built in Osijek, Croatia. Pursuant to the 2007 Agreement, Wendland and Catipovic were to receive a 20% interest in the ethanol plant. The parties to the 2007 Agreement agreed that the venture would be known as Ethanol Europe B.V. The day after Turley, Catipovic, and Wendland reached the 2007 Agreement, they were joined by Fagen in Mason City, and they retained FI as the builder for the Osijek plant. In an e-mail to Catipovic and Wendland dated July 3, 2007, Turley confirmed details of the 2007 Agreement. *See* Complaint (docket no. 1), Exhibit A (unsigned proposed agreement identifying Catipovic and Wendland as the "promoters," and granting them a 20% interest, and identifying Turley and Chris McHugh as the "investors," and granting them an 80% interest).

Catipovic alleges that Turley subsequently sent "numerous" communications to Catipovic and Wendland in Iowa regarding their agreement. More specifically, in his Declaration, Catipovic avers that Turley and his representatives "constantly" communicated with him and with Wendland in Iowa, via e-mail, telephone, etc., to discuss the status of the Eastern Europe ethanol project from June 2007 forward, and that this communication included extensive negotiations, sent to the promoters in Iowa, concerning a possible shareholders agreement. Catipovic has attached examples of these communications to his Declaration.

Catipovic alleges that, in reliance on the agreements with Turley, Fagen, and FI, and Turley's promise to fund a subsistence package for him, Catipovic took a leave of

absence from his employment with the VA Hospital and moved to Croatia to focus his full energies on the Ethanol Europe project. FI entered into a Preliminary Services Agreement with Ethanol Europe B.V. on October 18, 2007, and, in early 2008, Fagen traveled to Croatia. Also in early February 2008, Catipovic met with Turley again, this time in Ireland, to address and negotiate issues that had arisen regarding the Ethanol Europe project. Catipovic alleges that, at this time, work was progressing on a shareholders agreement, pursuant to the 2007 Agreement. Catipovic alleges that he and Turley successfully addressed several outstanding issues and celebrated their continued commitment to the 2007 Agreement.

Catipovic alleges that, days later, on February 15, 2008, after he had left Ireland, Turley inexplicably and unilaterally refused to move forward with the 2007 Agreement and ordered that all work on the shareholders agreement cease. In a letter dated February 20, 2008, Turley offered what Catipovic alleges were material changes to the 2007 Agreement and provided Catipovic and Wendland with what they regarded as three unacceptable options. Although Catipovic alleges that he responded to Turley's letter with an attempt to salvage some type of business relationship, Turley halted all communications.

Catipovic also alleges that, unbeknownst to him or to Wendland, after they had presented their business opportunity to Turley, Fagen, and FI, those three secretly planned to move forward without Catipovic and Wendland and, indeed, used the information, resources, and contacts, as well as the logo, business and financial plans, and the services of the commercial real estate expert that Catipovic and Wendland had provided to pursue the Ethanol Europe project without Catipovic and Wendland. Catipovic alleges that Turley's efforts included contacting the Croatian government in a failed attempt to obtain the prime parcel of real estate that Catipovic had previously

secured for the first Eastern Europe ethanol plant, then attempting to secure alternate sites elsewhere in Eastern Europe. Catipovic alleges that a March 2010 newspaper article reported that FI was pre-fabricating pipe for an ethanol plant in Hungary and identified Turley as the key investor in that project. Construction began on an ethanol plant in Hungary in August 2010. Catipovic alleges that Turley, Fagen, and FI ultimately built an ethanol plant in Hungary and continue to pursue the Ethanol Europe project that he and Wendland initially presented to them.

In an affidavit filed in support of Turley's first motion to dismiss and referred to in his second motion to dismiss, which is currently pending, Turley avers that he is a citizen of the Republic of Ireland and a resident of Hungary and that he has never been a resident of Iowa or any other state in the United States. He also avers that he does not hold, and has never held, an ownership interest in any property or business in Iowa; that he is not currently, and has never been, an officer or board member of any business based in Iowa or any other state in the United States; that he does not regularly conduct business with any individuals or businesses located in Iowa; that he has only been to Iowa on two occasions, the first time in 2007, for two days, to visit an ethanol plant located in Mason City, Iowa, and to meet with Catipovic regarding the alleged matters at issue in this lawsuit, and the second time in 2011, an overnight visit, to tour an ethanol plant located in Arthur, Iowa. Turley also avers that he does not regularly communicate via telephone, e-mail, or regular mail with individuals or businesses in Iowa, although he does speak via telephone with an individual in Arthur, Iowa, on an infrequent basis regarding matters that are purportedly wholly unrelated to this lawsuit. He also acknowledges that, in 2007 and 2008, he communicated with Catipovic, then a resident of Mason City, primarily via e-mail and regular mail, regarding the alleged

matters at issue in this lawsuit. Turley avers that he has no other contacts with the state of Iowa.

### B. Procedural Background

On December 29, 2011, Catipovic filed his Complaint (docket no. 1), initiating this lawsuit and naming Turley, Fagen, and FI as defendants. Where appropriate, I will refer to Fagen and FI collectively as the Fagen Defendants. In his Complaint, Catipovic asserted a claim of breach of contract against Turley and a claim of unjust enrichment against Turley and the Fagen Defendants. On March 30, 2012, Turley filed a Motion To Dismiss For Lack Of Subject Matter Jurisdiction And Personal Jurisdiction (docket no. 8), pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, and the Fagen Defendants filed a Motion To Dismiss For Lack Of Subject Matter Jurisdiction (docket no. 9), pursuant to Rule 12(b)(1). Catipovic resisted those motions to dismiss on April 16, 2012. *See* docket nos. 12 and 13.

However, on April 12, 2012, within 21 days of the filing of the defendants' original motions to dismiss, *see* FED. R. CIV. P. 15(a)1)(B) (as amended effective December 1, 2009), Catipovic also filed an Amended Complaint (docket no. 11), again naming Turley, Fagen, and FI as defendants. In his Amended Complaint, Catipovic alleges that this court has personal jurisdiction over the defendants, as they actively conducted business in Iowa and committed acts that are the subject of the Amended Complaint in Iowa; that diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332, as there is complete diversity with respect to the claims and the amount in controversy exceeds $75,000.00; and that venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to his claims occurred in this district.

8

In **Count I** of his Amended Complaint, Catipovic asserts a claim of breach of contract against defendant Turley. This claim is based on Turley's alleged unilateral termination of performance of and failure to perform all of his obligations under the 2007 Agreement, including his commitment to provide equity capital. On this claim, Catipovic seeks an award of all compensatory and consequential damages, including his expected return on the 2007 Agreement, interest, costs, and any other relief that this court deems equitable, just, and proper. In **Count II** of his Amended Complaint, Catipovic asserts a claim of unjust enrichment against Turley and the Fagen Defendants. In this claim, Catipovic asserts that the defendants received his and Wendland's services, including the original idea to build ethanol plants in Eastern Europe, the identification of a commercial real estate expert in Eastern Europe, and introduction to the ethanol industry and an ethanol plant manufacturer for Turley, and a business plan, financial projections, logo, etc., for all defendants; that the defendants used these services, well-recognized in the ethanol industry as valuable, without compensating Wendland or Catipovic; and that the defendants will be unjustly enriched unless they are ordered to compensate Catipovic for the valuable services that he provided. On this claim, Catipovic seeks an award of the industry standard compensation for the work that he performed and the value that he provided to the defendants, as well as interest on that amount, costs, and any other further relief that the court deems equitable.

On April 23, 2012, defendant Turley filed his Motion To Dismiss Plaintiff's First Amended Complaint For Lack Of Personal Jurisdiction (docket no. 16), pursuant to Rule 12(b)(2), and a Notice (docket no. 17) withdrawing his original Motion To Dismiss (docket no. 8) as moot in light of the filing of Catipovic's Amended Complaint. In his April 23, 2012, Motion To Dismiss, Turley argues, in essence, that

his contacts with Iowa are so limited that they are insufficient for this court to exercise personal jurisdiction over him. On May 7, 2012, Catipovic filed a Resistance (docket no. 20) to Turley's second Motion To Dismiss, accompanied by his Declaration and supporting exhibits, and Turley filed a Reply (docket no. 22) in further support of his Motion on May 16, 2012.

On April 30, 2012, the Fagen Defendants filed their Motion To Dismiss Plaintiff's Amended Complaint (docket no. 18), pursuant to Rule 12(b)(3), for improper venue, and Rule 12(b)(6), for failure to state a claim on which relief can be granted, and a Notice (docket no. 19) withdrawing their original Motion To Dismiss (docket no. 9) as moot in light of the filing of Catipovic's Amended Complaint. As to their challenge to venue, the Fagen Defendants argue that Catipovic's unjust enrichment claim is based on events and actions that occurred tangentially in Minnesota, but primarily in Croatia and Hungary, while none occurred in Iowa. Thus, they argue that venue is not proper in Iowa under former 28 U.S.C. § 1391(a)(2).[1] Moreover, they argue that, if Turley is dismissed, then venue is not proper under former 28 U.S.C. § 1391(a)(3), because venue is only proper in Minnesota pursuant to former 28 U.S.C. § 1391(a)(1), where the remaining defendants reside. As to their challenge to the sufficiency of the Amended Complaint to state a claim, the Fagen Defendants argue that Catipovic has failed to allege essential elements of a claim of unjust enrichment under

---

[1] As the Fagen Defendants point out in their supporting brief, 28 U.S.C. § 1391 was amended effective January 7, 2012, for all actions commenced on or after that date. *See* Federal Courts Jurisdiction And Venue Clarification Act of 2011, Pub. L. 112-63, 125 Stat. 758, § 205 (December 7, 2011). This amendment, *inter alia*, moved the pertinent provisions concerning venue in civil actions from § 1391(a) to § 1391(b). However, Catipovic's action was commenced on December 29, 2011, so that it is subject to the prior version of the statute. *Id.*

Minnesota law.  On May 17, 2012, Catipovic filed his Resistance (docket no. 23) to the Fagen Defendants' second Motion To Dismiss.  On May 23, 2012, the Fagen Defendants filed a Reply (docket no. 24) in further support of their Motion.

I do not find that oral arguments on the pending Motions To Dismiss are necessary, nor does my crowded schedule permit timely scheduling of such oral arguments.  Therefore, I deem the Motions To Dismiss fully submitted on the written submissions.

## II.    LEGAL ANALYSIS

Turley and the Fagen Defendants have filed separate Motions To Dismiss with little apparent overlap of issues.  Therefore, I will consider their motions separately, beginning with Turley's Motion.

### A.    Turley's Motion To Dismiss

As noted above, Turley's April 23, 2012, Motion To Dismiss asserts lack of personal jurisdiction, pursuant to Rule 12(b)(2).  Catipovic asserts that this court does have personal jurisdiction over Turley.

#### 1.    Arguments of the parties

Turley argues that Catipovic's allegations and his own affidavit show that he has no ongoing contacts with Iowa such that general jurisdiction is proper.  Furthermore, Turley argues, any of his conduct in Iowa arguably related to this lawsuit is insufficient to support the exercise of specific jurisdiction.  This is so, he argues, because Catipovic's allegations show that the alleged 2007 Agreement concerned the development of ethanol plants in Croatia and that the majority of negotiations related to

the project occurred outside of Iowa. He contends that simply entering into an agreement with an Iowa resident is not enough for personal jurisdiction to attach. He argues that he did not have enough contacts with Iowa for personal jurisdiction to attach, even considering his visit to Mason City, Iowa, and his e-mail and telephone communications with Catipovic in 2007 and 2008, and conceding, for the sake of argument, that he entered into a contractual relationship with Catipovic while present in Iowa. Therefore, he argues, Catipovic's claims against him must be dismissed for lack of personal jurisdiction.

Catipovic argues that, at this juncture, he need only make a *prima facie* showing of personal jurisdiction over Turley and that, viewing the facts alleged in the Amended Complaint and various affidavits in the light most favorable to him, he has done so. He argues that he has pointed to sufficient circumstances from which Turley would have reasonably anticipated being haled into court in this forum, at least to satisfy specific jurisdiction. Catipovic argues that Turley admitted in his affidavit that he traveled to Iowa to meet with Catipovic and Wendland, and that Turley actually entered into the agreement at issue while in Iowa, thus creating a continuing relationship with citizens of this state, such that Turley is subject to regulation and sanctions in this state. Catipovic also argues that Turley's contacts with Iowa from initiating and participating in communications related to the 2007 Agreement are relevant to support personal jurisdiction. In other words, Catipovic argues that the issues in this lawsuit center on the agreement between Catipovic and Turley, which was conceived and entered into in Iowa. Catipovic also argues that the exercise of personal jurisdiction over Turley comports with fair play and substantial justice, because nothing undermines the effect of Turley directing his activities at forum residents. More specifically, Catipovic argues that Turley has secured counsel in Iowa and has traveled to Iowa on occasion;

Iowa has an interest in adjudicating a dispute concerning an agreement entered into in Iowa; and no other state has an interest in resolving the controversy.

In reply, Turley reiterates that simply entering into a contract with Iowa residents, even when coupled with communications with the Iowa residents related to the alleged agreement, is not sufficient to support personal jurisdiction over him. He also argues that, where the negotiations and course of dealing of the parties do not create a substantial connection to the forum state and the contemplated consequences or object of the alleged contract are centered outside the forum state, personal jurisdiction does not lie. Here, he argues that his contacts with Iowa are inconsequential and merely happenstance. He also argues that it is clear that significant portions of the alleged negotiations took place in Ireland and that the consequences of the alleged contract were centered in Croatia. He argues that merely retaining counsel in Iowa does not establish minimum contacts, because the relevant contacts must have been prior to the filing of the lawsuit.

### 2. *Applicable standards*

#### a. *Principles of personal jurisdiction*

"Personal jurisdiction over a defendant represents the power of a court to enter 'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592-93 (8th Cir. 2011) (quoting *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91 (1978)). Personal jurisdiction can be either "general" or "specific." *See, e.g., id.* at 593. Put succinctly,

> "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action

13

> involving a particular defendant, regardless of where the
> cause of action arose.'" *Miller v. Nippon Carbon Co.*, 528
> F.3d 1087, 1091 (8th Cir. 2008) (alterations in original)
> (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d
> 816, 819 (8th Cir. 1994)).

*Viasystems, Inc.*, 646 F.3d at 593.

In a diversity case, such as this one, personal jurisdiction—"general" or "specific"—can be exercised only if it is authorized by the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id*. at 593 & 595; *accord K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) ("Personal jurisdiction . . . exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)). The Eighth Circuit Court of Appeals has repeatedly recognized that Iowa's long-arm statute expands personal jurisdiction to the widest due process parameters allowed by the United States Constitution, so that the court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *Hammond v. Florida Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005)); *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (*per curiam*) (citing *Newton Mfg. Co. v. Biogenetics, Ltd.*, 461 N.W.2d 472, 474 (Iowa Ct. App. 1990)).

### b. *"General" personal jurisdiction*

Because "general" personal jurisdiction extends to causes of action unrelated to the defendant's contacts with the forum state, it is subject to a higher due-process threshold than "specific" jurisdiction. *Viasystems, Inc.*, 646 F.3d at 595. Here, only an individual defendant, defendant Turley, has challenged personal jurisdiction over

him. "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2853-54 (2011)). Catopovic does not assert that Turley is, or ever was, a domiciliary of Iowa, or any other basis for the exercise of "general" jurisdiction over him. Therefore, I will turn to a more detailed consideration of the requirements of "specific" jurisdiction, on which Catipovic does rely.

### c.    *"Specific" personal jurisdiction*

"The touchstone of the due-process analysis" for specific jurisdiction is "whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Id.* at 594 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *accord K-V Pharm. Co.*, 648 F.3d at 592 ("Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 474–477 (1985), with brackets and internal quotation marks omitted)). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there." *Id.* (citations and internal quotation marks omitted); *accord K-V Pharm. Co.*, 648 F.3d at 592.

> Based on these principles, the Eighth Circuit has established five factors that must be considered in determining whether sufficient minimum contacts exist for personal jurisdiction: "(1) the nature and quality of the

15

contacts with the forum state; (2) the quantity of the
contacts; (3) the relationship of the cause of action to the
contacts; (4) the interest of [the forum state] in providing a
forum for its residents; and (5) the convenience or
inconvenience to the parties." *Johnson*, 614 F.3d at 794.
Although "the first three factors are primary factors, and the
remaining two are secondary factors," we look at all of the
factors and the totality of the circumstances in deciding
whether personal jurisdiction exists. *Id.*

*K-V Pharm. Co.*, 648 F.3d at 592-93.

### d.     The role of contracts in the personal jurisdiction analysis

The parties here dispute the effect of the 2007 Agreement and conduct related to

it in the determination of personal jurisdiction.    The Eighth Circuit Court of Appeals

also addressed this issue in *K-V Pharmaceutical Company*, as follows:

A contract between a plaintiff and an out-of-state defendant
is not sufficient in and of itself to establish personal
jurisdiction over the defendant in the plaintiff's forum state.
*Burger King*, 471 U.S. at 478–79, 105 S.Ct. 2174.
Personal jurisdiction, moreover, does not turn on
"mechanical tests or on conceptualistic theories of the place
of contracting or of performance." *Id.* at 478, 105 S.Ct.
2174 (ellipses and internal quotation marks omitted).    The
Supreme Court has instead

emphasized the need for a "highly realistic" approach
that recognizes that a "contract" is "ordinarily but an
intermediate step serving to tie up prior business
negotiations with future consequences which
themselves are the real object of the business
transaction."    It is these factors—prior negotiations
and contemplated future consequences, along with the
terms of the contract and the parties' actual course of
dealing—that must be evaluated in determining

> whether the defendant purposefully established minimum contacts within the forum.
>
> *Id.* at 479, 105 S.Ct. 2174 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316–17, 63 S.Ct. 602, 87 L.Ed. 777 (1943)).

*K-V Pharm. Co.*, 648 F.3d at 593.

The disposition of the personal jurisdiction question in *K-V Pharmaceutical Company* further highlights the significance of contract negotiations in the forum state and communications into the forum state by a foreign defendant relating to the contract. In that case, the court found that the foreign defendant's "purposeful contacts" with the forum state included "[l]etters, emails, and telephone calls to KV before May 1993 that were part of the contract negotiations"; the active involvement of numerous of the defendant's employees in those negotiations over a period of years; and a face-to-face meeting in the forum state to renegotiate the contract's payment terms. *See id.* The court distinguished the case before it from *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519 (8th Cir. 1996), in which it had concluded that personal jurisdiction over the foreign defendant was absent:

> True enough, the Singapore company in *Digi–Tel* exchanged telephone calls, letters, and faxes with the Minnesota company, and the contract contained a Minnesota choice-of-law provision. *Id.* at 523. *But all of the face-to-face meetings occurred in Singapore and "[n]o part of the contract was to be performed in Minnesota." Id.* at 525. The Singapore company "was to develop and produce the phones [that the Minnesota company purchased] overseas and [was to] transfer ownership to [the Minnesota company] in Singapore." *Id.* Because the "delivery term was 'F.O.B. Singapore' . . ., the seller was obligated to deliver to Singapore and nowhere else." *Id.* . . . In contrast, the parties here (1) had a long-term product-development

17

contract that would require Uriach to have a continuing relationship with Missouri; (2) *the parties engaged in a face-to-face meeting in Missouri to negotiate an amendment to their contract*; (3) the contract terms governing the sale and delivery of Flutrimazole required Uriach to ship the drug to Missouri; and (4) Uriach made payments to KV, which is based in Missouri. These facts distinguish *Digi–Tel* from the case before us.

*K-V Pharm. Co.*, 648 F.3d at 595-96 (emphasis added). The court also distinguished its more recent decision in *Viasystems*, in part, on the ground that the foreign defendant in that case "never engaged in face-to-face meetings" in the forum state and also on the ground that other contacts, consisting of "'scattered emails, phone calls, and a wire-transfer of money to [the plaintiff] in Missouri,'" were merely "incidental" and "did not 'constitute a deliberate and substantial connection with the state such that [the defendant] could reasonably anticipate being haled into court there.'" *Id*. at 596 (citing *Viasystems*, 646 F.3d at 592-94); *see also id*. (distinguishing *Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522 (8th Cir. 1992), on the ground that the plaintiff admitted that the contract was negotiated, presented, and executed in Japan).

Thus, even if the place of contracting is not dispositive, where face-to-face meetings and negotiations occurred or were directed and where the parties' agreement was executed remain significant factors in the minimum-contacts, due-process analysis.

### e.      *Rule 12(b)(2) standards for dismissal for lack of personal jurisdiction*

The remaining preliminary question is what standards apply where, as here, a defendant challenges personal jurisdiction by pre-answer motion to dismiss. Rule 12(b) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss,

*inter alia*, for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). As the Eighth

Circuit Court of Appeals also recently explained in *K-V Pharmaceutical Company*,

> To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts "to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." [*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)] (original brackets and internal quotation marks omitted); *accord Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Although "[t]he evidentiary showing required at the prima facie stage is minimal," *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal quotation marks omitted), the "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion, *Dever*, 380 F.3d at 1072 (internal quotation marks omitted). We must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing. *Digi-Tel*, 89 F.3d at 522.

*K-V Pharm. Co.*, 648 F.3d at 591-92."); *Pangaea, Inc.*, 647 F.3d at 745 ("When

jurisdiction is challenged on a pretrial motion to dismiss, the 'nonmoving party need

only make a prima facie showing of jurisdiction.'" (quoting *Dakota Indus., Inc. v.

Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)); *Viasystems, Inc.*, 646

F.3d at 593 ("We require a party asserting jurisdiction to make only a *prima facie*

showing of jurisdiction and will view the evidence in the light most favorable to that

party."). More specifically still, "[w]here, as here, 'the district court does not hold a

hearing and instead relies on pleadings and affidavits, . . . the court must look at the

facts in the light most favorable to the nonmoving party, and resolve all factual conflicts

in favor of that party.'" *Pangaea, Inc.*, 647 F.3d at 745 (quoting *Dakota Indus., Inc.*, 946 F.2d at 1387, with internal citations omitted)). "Nevertheless, '[t]he party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction.'" *Viasystems, Inc.*, 646 F.3d at 593 (quoting *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)).

### 3. *Application of the standards*

Contrary to Turley's assertions, after reviewing the pleadings and affidavits and considering the facts in the light most favorable to Catipovic—in the absence of a hearing—I conclude that Catipovic has made the necessary *prima facie* showing of "specific" personal jurisdiction over Turley to defeat Turley's Rule 12(b)(2) Motion To Dismiss. *See Pangea, Inc.*, 647 F.3d at 745. Catipovic's evidence, which is confirmed rather than contradicted in essential details by Turley's affidavit, is enough to make a *prima facie* showing that Catipovic has satisfied the "touchstone of the due-process analysis," that is, that Turley "has sufficient minimum contacts with [Iowa] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Viasystems, Inc.*, 646 F.3d at 594 (internal quotation marks and citations omitted).

More specifically, I find that Turley "has purposefully availed himself of the benefits and protections of the forum state to such a degree that [he] should reasonably anticipate being haled into court there." *Id.* (citations and internal quotation marks omitted) (describing this as the "fundamental inquiry"). I find that the nature, quality, and quantity of Turley's contacts with Iowa, *see K-V Pharm. Co.*, 648 F.3d at 592-93 (identifying these as the first two factors in the minimum contacts analysis), amount to more than "scattered emails [and] phone calls" or merely "incidental" contact with the

forum; instead, Turley engaged in a face-to-face meeting with Wendland and Catipovic, after touring ethanol plants in Iowa, during which Turley entered into the 2007 Agreement with Iowa residents. *See id*. at 595-96 (distinguishing both *Digi-Tel* and *Viasystems* on the basis of where face-to-face negotiations and execution of the contract occurred). Under these circumstances, Turley's contacts with Iowa were not "mere fortuity," but arose because Turley "purposefully availed" himself of the privilege of conducting activities in Iowa. *See Pangaea, Inc.*, 647 F.3d at 745. Turley then followed up with frequent—Catipovic alleges "numerous" or "constant"—contacts with Catipovic in Iowa during 2007 and 2008 concerning the performance of the 2007 Agreement and further negotiation of a shareholders agreement. *Cf. K-V Pharm. Co.* 648 F.3d at 593 (noting the frequency of communications with the plaintiff in the forum state over an extended period of time relating to negotiation of the contract and an amendment).

It is certainly true that this case differs from *K-V Pharmaceutical Company* in that the 2007 Agreement was not to be performed *exclusively* in the forum state, because a good share of the parties' anticipated ongoing relationship was expected to be centered in Croatia and elsewhere in Eastern Europe, and some of the parties' further negotiations apparently occurred in Ireland. *Compare id*. at 595-96. Nevertheless, enough of Turley's course of conduct specifically relating to the parties' relationship occurred in Iowa or was directed at Catipovic and Wendland in Iowa for a court in this forum to have the power to subject Turley to judgment concerning that conduct. *See id*. at 592-93 (identifying the third factor in the minimum contacts analysis as the relationship of the cause of action to the contacts); *see also Pangaea, Inc.*, 647 F.3d at 745 (considering whether the defendant followed a course of conduct directed at the society or economy within the forum to give that forum the power to subject the

defendant to judgment concerning that conduct). Turley entered into a continuing relationship with Iowa, to the extent of continuing to communicate with Catipovic and Wendland here, and it appears that Wendland's part of the relationship was performed in Iowa. *Cf. K-V Pharm. Co.*, 648 F.3d at 595-96 (noting that the defendant entered into an agreement with the plaintiff that required an ongoing relationship with the forum state).

Consideration of the remaining factors in the minimum contacts analysis does not convince me that it is unjust or unreasonable for Turley to be haled into court here. *See id.* at 592-93 (also considering the interest of the forum state in providing a forum for its residents and the convenience or inconvenience to the parties). Iowa has an interest in providing a forum for a former resident—and a resident at the time of much of the conduct at issue—as well as a forum for hearing a dispute concerning a contract negotiated in part and entered into in Iowa with Iowa residents to be performed, at least in part, in Iowa. *Cf. id.* at 595. The convenience of the parties is essentially neutral or largely balances out, because Turley has not found it inconvenient to travel to Iowa to pursue a business venture and Catipovic formerly resided here and is still a resident of the United States. *Cf. id.* This is true, even though a trial in Croatia might be no less or no more inconvenient for either of the parties, because of their past travels there and Turley's alleged current residence in Hungary. *Cf. id.* I do not find that it is unfair or unreasonable to subject Turley to suit in this forum.

### 4. Summary

Considering the totality of the circumstances, *see id.* at 592-93, I conclude that this court may exercise "specific" personal jurisdiction over Turley concerning Catipovic's claims. Under these circumstances, Turley's Motion To Dismiss for lack of personal jurisdiction is denied.

### B.     *The Fagen Defendants' Motion To Dismiss*

The Fagen Defendants have also moved to dismiss, albeit on two grounds that are different from Turley's. They have moved to dismiss for improper venue, pursuant to Rule 12(b)(3), and for failure to state a claim on which relief can be granted, pursuant to Rule 12(b)(6). I will consider these grounds for dismissal in turn.

### 1.     *Dismissal for improper venue*

### a.     *Arguments of the parties*

The Fagen Defendants assert that venue must be assessed on the basis of the circumstances as they now exist, not as they existed at the time that the Amended Complaint was filed. Indeed, they urge me to consider Turley's Motion To Dismiss first, as I have done, and their initial brief does not contemplate the possibility that Turley's Motion might be denied, as it actually has been. Nevertheless, I will consider all of their arguments, in the event that my denial of Turley's Motion is overturned.

The Fagen Defendants argue that, if Turley is dismissed from the action, the court will be left with a claim of unjust enrichment by a resident of Massachusetts against two Minnesota defendants. They argue that, in such circumstances, venue is not proper on the unjust enrichment claim against them under former 28 U.S.C. § 1391(a)(2),[2] because venue pursuant to that subsection must be based on where the defendants' actions occurred, not on where the plaintiff's actions occurred. They argue that their actions allegedly giving rise to Catipovic's unjust enrichment claim occurred either in Croatia or Hungary, or possibly tangentially in Minnesota, when they

---

[2] Again, as I explained above, in note 1, the Fagen Defendants have correctly relied on the version of § 1391 in effect prior to January 7, 2012.

allegedly took advantage of Catipovic's services, not in Iowa. They point out that it was not until 2008 that Turley allegedly planned to move ahead without Catipovic, so that only then did Catipovic's unjust enrichment claim arise. They also argue that, if Turley is dismissed, then venue would be proper on claims against Minnesota defendants only in Minnesota, pursuant to former § 1391(a)(1), because former § 1391(a)(3), which applies only if there is no district in which the action may otherwise be brought, would be inapplicable.

In response, Catipovic argues that defendant Turley is currently a defendant in this action unless and until the court grants his motion to dismiss. Catipovic argues that, consequently, venue is proper in this district pursuant to former § 1391(a)(2), because this is a district in which a substantial part of the events or omissions giving rise to the claim occurred. He argues that a substantial part of the events giving rise to the unjust enrichment claim occurred in Iowa, pointing to the meeting in Mason City, Iowa, in June 2007 at which Catipovic and all of the defendants were present and during which all of the parties made plans and entered into agreements to build ethanol plants in Eastern Europe—in other words, Catipovic argues that this meeting was when the parties began their business relationship together in earnest and that it is when the defendants began receiving his services for which he was not compensated. He argues that he does not have to show that the Northern District of Iowa is the best venue or that it has the most substantial contacts to the dispute, just that it has a substantial connection to the claim. He argues that the Northern District of Iowa meets that requirement.

Catipovic also argues that dismissal would be inappropriate, even assuming, for the sake of argument, that he is unable to show that the Northern District of Iowa had a substantial connection to his unjust enrichment claim against the Fagen Defendants.

24

Rather, he argues that, in those circumstances, the court should transfer the case, in the interest of justice, to the District of Minnesota, pursuant to 28 U.S.C. § 1406(a) (2012). He also argues that, even if this district is not the proper venue for his claim against the Fagen Defendants, it is still the proper venue for his claims against Turley, so that this court has the power to sever the claims and transfer only the claim against the Fagen Defendants, rather than transfer the entire action. He argues, however, that I should not sever his claims in this case, because doing so would result in the same issues being litigated in two places. He also argues that transfer of the entire action is not appropriate, because Minnesota is not a proper venue for his claims against Turley. Thus, he argues that this action ultimately must stay in this district.

In reply, the Fagen Defendants reiterate that, if I dismiss Turley, this case must be dismissed, because venue would then be proper only in Minnesota. The Fagen Defendants belatedly concede that, if Turley is a proper defendant, then venue would be proper in the Northern District of Iowa, but they argue that it would be proper only under former § 1391(a)(3), as this is a district in which any defendant can be found, not under former § 1391(a)(2), as Catipovic asserts.[3]

### b.    *Applicable standards*

Venue is "the place where the power to adjudicate is to be exercised, the place where the suit may be or should be heard." *Farmers Elevator Mut. Ins. Co. v. Carl J.*

---

[3] The Fagen Defendants also argue that I could still properly dismiss the case, even if venue is proper pursuant to former § 1391(a)(3), because Catipovic has failed to state an unjust enrichment claim under Minnesota law. They argue that, because the case is transferable to Minnesota pursuant to § 1406(a), Minnesota law would also be applicable to the unjust enrichment claim. I will consider, below, if I reach the Fagen Defendants' Rule 12(b)(6) motion, whether Catipovic has stated a claim of unjust enrichment under applicable law.

*Austad & Sons, Inc.*, 343 F.2d 7, 11 (8th Cir. 1965) (citing 56 AM. JUR. *Venue*, § 2, and 92 C.J.S. *Venue* § 1). The Eighth Circuit Court of Appeals has recognized that "'[v]enue requirements exist for the benefit of defendants.'" *Richards v. Aramark Servs., Inc.*, 108 F.3d 925, 928 (8th Cir. 1997) (quoting *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996)). More specifically, "[o]ne of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute.'" *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)); *see also Richards*, 108 F.3d at 928 (quoting *Woodke*, 70 F.3d at 985). The Fagen Defendants are correct that both the Eighth Circuit Court of Appeals and I have held that "[i]t is proper to assess the propriety of venue on the basis of circumstances as they now exist, as opposed to the state of affairs that obtained when the complaint was first filed against two defendants." *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200-01 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989)); *Daughetee v. CHR Hansen, Inc.*, 2011 WL 1113868, *3-*4 (N.D. Iowa March 25, 2011) (slip op.) (quoting *Knowlton*, 900 F.2d at 1200).

### i.     *The applicable venue statute*

Where no "special" venue statute is applicable, the general venue statute, 28 U.S.C. § 1391, applies. *Id*. More specifically, where a "transitory" action (one not involving real property) was filed in federal court before January 7, 2012, based solely on diversity jurisdiction, venue is determined by former 28 U.S.C. § 1391(a), and state venue statutes are not applicable. *See Accurate Controls, Inc. v. Cerro Gordo Cnty. Bd. of Supervisors*, 627 F. Supp. 2d 976, 987 (N.D. Iowa 2009); 28 U.S.C. § 1391(a) (2002) (expressly providing for venue in a "civil action wherein jurisdiction is founded only on diversity of citizenship"). Former section 1391(a) provided as follows:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (2002). Catipovic relies solely on former § 1391(a)(2) as the basis for venue in this case.

### ii.    *Venue based on § 1391(a)(2)*

Former subsection 1391(a)(2) "does not posit a single appropriate district for venue; venue may be proper in any number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." *Woodke*, 70 F.3d at 985 (explaining similar language in former § 1391(b)(2)); *Setco Enters. Corp. v. Robb*ins, 19 F.3d 1278, 1281 (8th Cir. 1994) (explaining § 1391(a)(2)). The Eighth Circuit Court of Appeals has expressly rejected the notion that former § 1391(a)(2) requires the court to choose the district with the "weight of the contacts" as the proper district. *Setco*, 19 F.3d at 1281. Instead,

> we no longer ask which district among two or more potential forums is the "best" venue, as [*Missouri Hous. Dev. Comm'n v.*] *Brice*[, 919 F.2d 1306 (8th Cir. 1990),] did. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (construing § 1391(b)(2)). Rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.

*Setco*, 19 F.3d at 1281; *accord Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (citing *Setco*, 19 F.3d at 1281).

In the part pertinent here, former section 1391(a)(2) expressly requires a determination of whether the plaintiff's chosen forum is one "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) (2002); *see Cottman*, 36 F.3d at 294 (explaining, "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim,' theoretically a more easily demonstrable circumstance than where a 'claim arose,'" which was the language in the predecessor statute). Thus, the key question is what events are a "substantial part" of those giving rise to the plaintiff's claims?

The Eighth Circuit Court of Appeals has explained that matters of importance to the plaintiff's suit, such as conduct of the parties or a court order on which the claim is based, are a "substantial part" of the events giving rise to the plaintiff's claims. *Setco*, 19 F.3d at 1281. Similarly, the Third Circuit Court of Appeals has explained that "[i]n assessing whether events or omissions giving rise to the [plaintiff's] claims are substantial, it is necessary to look at the nature of the dispute." *Cottman*, 36 F.3d at 295; *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (observing that "for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question," and that it "would be error . . . to treat the venue statute's substantial part test as mirroring the minimum contacts test employed in personal jurisdiction inquiries"); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (noting that in determining venue under former § 1391(a)(2), "[o]nly the events that directly give rise to a claim are relevant," and that "of the places where the events have taken place, only those locations hosting a

substantial part of the events are to be considered).   The Eighth Circuit Court of Appeals has clarified that the district in which "a substantial part of the events or omissions giving rise to the claim occurred," within the meaning of § 1391(a)(2), means where the events giving rise to the *action* occurred, not where the events giving rise to the plaintiff's *damages* occurred.  *See Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 736 (8th Cir. 1997) (rejecting the plaintiff's argument that Wisconsin was a proper forum, because "a substantial part of the events giving rise to her damage claims occurred in Wisconsin where she received the majority of her medical treatment," concluding that "the events giving rise to her action involve the alleged negligence of the defendants in South Dakota, not the nature of her medical treatment in Wisconsin).[4]

### iii.     *Standards for dismissal for improper venue*

Rule 12(b) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "improper venue," pursuant to subsection (b)(3), as well as for lack of personal jurisdiction, pursuant to subsection (b)(2).  FED. R. CIV. P. 12(b)(3).[5]

---

[4] The Ninth Circuit Court of Appeals appears to have reached a different conclusion, because it has held that, in a tort action, "'the locus of the injury [is] a relevant factor' in making this determination" of where a substantial part of the events giving rise to the claim occurred.  *See Fiore v. Walden*, 657 F.3d 838, 859 (9th Cir. 2011) (quoting *Myers v/ Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001)). In *Fiore*, the Ninth Circuit Court of Appeals held that the fact that economic harm was suffered in Nevada was sufficient to establish Nevada as a proper forum under former § 1391(b)(2), which was analogous to former § 1391(a)(2), but for civil actions not based exclusively on diversity jurisdiction.  *Id.*

[5] The Eighth Circuit Court of Appeals has "recognize[d] that there is some controversy as to whether Rule 12(b)(3) or 12(b)(6) is the proper vehicle for bringing a motion to dismiss based on improper venue when the issue turns on a forum selection clause in the parties' underlying contract," but did not resolve that controversy for this Circuit.  *See Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 545 n.5 (8th Cir.

29

Although the Eighth Circuit Court of Appeals does not appear to have spoken to the issue, the Fourth Circuit Court of Appeals has stated that, just as a plaintiff must make only a *prima* facie showing of personal jurisdiction when faced with a Rule 12(b)(2) motion, a plaintiff resisting a Rule 12(b)(3) motion to dismiss for improper venue is only required to make a *prima facie* showing of proper venue. *Aggarao v. MOL Ship Mgmt., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). That statement seems to suggest that the plaintiff bears the burden to show proper venue on a Rule 12(b)(3) motion, although that burden might be slight. However, the Circuit Courts of Appeals that have expressly considered the matter are split on who bears the burden when venue is challenged, pursuant to Rule 12(b)(3). *Compare Myers v. American Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982) (holding that the party asserting improper venue bears the burden of showing improper venue); *with Anonymous v. Kaye*, 104 F.3d 355 (2d Cir. 1996) (unpublished op.) (holding that, "[o]n a motion to dismiss for improper venue, the plaintiff has the burden of establishing that it has chosen the proper venue" (citing *Pocahontas Supreme Coal Co. v. National Mines Corp.*, 90 F.R.D. 67, 69 (S.D.N.Y. 1981))). I do not find it necessary to decide who bears the burden of proof, because that issue is not likely to be dispositive here; the burden of proof will not change the record evidence.

Courts to consider the question of what record I may consider on a Rule 12(b)(3) motion to dismiss for improper venue have all agreed that I am "permitted to consider

---

2003). Even though this action arises, in part, from alleged breach of a contract, the 2007 Agreement, and Catipovic alleges that there was also an "agreement" with the Fagen Defendants that they would provide services to the Ethanol Europe group, no party has argued that there is a forum selection clause in any agreement that would govern venue.

evidence outside of the pleadings." *See, e.g., Aggarao*, 675 F.3d at 366; *Faulkenberg v. CB Tax Franchise Sys., L.P.*, 637 F.3d 801, 809-10 (7th Cir. 2011); *Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1244 n.5 (11th Cir. 2011); *Doe 1 v. AOL, L.L.C.*, 552 F.3d 1077, 1081 (9th Cir. 2009). Nevertheless, most courts and commentators also agree that, on a Rule 12(b)(3) motion to dismiss for improper venue, I must accept as true all allegations in the complaint, at least where they are not contradicted by a defendant's affidavit, and resolve all conflicts in favor of the plaintiff. *See, e.g., Aggarao*, 675 F.3d at 366; *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *TradeComet.com, L.L.C. v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011); *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352 (3d ed. 2004); *but see Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005) ("A motion to enforce a forum-selection clause is treated as a motion pursuant to Federal Rule of Civil Procedure 12(b)(3). Consequently, the pleadings need not be accepted as true, and facts outside the pleadings properly may be considered." (citation omitted)).[6]

In light of the language of former § 1391(a)(2) and the emphasis of the courts applying that statute have put on the relationship between the events relied on to establish venue and the plaintiff's claims, *see, e.g., Setco*, 19 F.3d at 1281, I find particularly appropriate the "two-part analysis" employed by the Tenth Circuit Court of

---

[6] Although lack of personal jurisdiction leaves the court with no alternative but to dismiss the claims against the pertinent defendant, 28 U.S.C. § 1406(a) allows a district court to transfer "a case laying venue in the wrong division or district . . . to any district or division in which it could have been brought," if doing so would "be in the interest of justice." I will consider whether transfer or dismissal is the appropriate course only if I determine that venue is improper in this district.

Appeals when considering challenges to venue under former § 1391(a)(2) pursuant to Rule 12(b)(3). *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). As that court explained, "First, [the court] examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.* "Second, [the court] determine[s] whether substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf Ins. Co*, 417 F.3d at 357). The Tenth Circuit Court of Appeals noted that the Circuit Courts of Appeals have split on whether the focus should be solely on the activities of the defendant or should also consider the activities of the plaintiff. *See id.* at n.11 (citing cases). I do not have to decide which side of the split to follow, because the Eighth Circuit Court of Appeals has already made clear that the controlling law in this Circuit is that courts must focus on relevant activities of the defendant, not activities of the plaintiff. *See Woodke*, 70 F.3d at 985 (concluding that Congress meant to require courts to focus on relevant activities of the defendant, not activities of the plaintiff).

### c. *Application of the standards*

As the Fagen Defendants assert, I must assess venue in the circumstances as they now exist. *Knowlton*, 900 F.2d at 1200. As noted above, the primary premise of the Fagen Defendants' Motion To Dismiss was that defendant Turley's Motion To Dismiss would be granted. That premise has failed, however, because I have denied Turley's Motion To Dismiss. Nevertheless, I will consider whether venue is proper in this district, both in the circumstances as they now exist, with Turley part of the lawsuit, and in the circumstances that the Fagen Defendants had envisioned, with Turley absent from the lawsuit, because of the possibility that my denial of Turley's Motion To Dismiss might be overturned.

### i. *Venue with Turley present*

Starting with the circumstances as they now exist, *see Knowlton*, 900 F.2d at 1200, that is, with Turley still present as a defendant in this litigation, the Fagen Defendants belatedly concede, in their Reply, that venue would be proper in this district. However, they assert that venue is proper here only pursuant to former § 1391(a)(3), because this is a district in which any defendant can be found, not pursuant to former § 1391(a)(2), because this is not a district in which a "substantial part" of the events giving rise to Catipovic's claim against them occurred. In light of the Fagen Defendants' concession that venue is proper in this district, if Turley remains part of the lawsuit, I do not find it necessary, in the first instance, to decide whether venue is proper pursuant to former § 1391(a)(2) or former § 1391(a)(3).[7] Because Turley remains part of this lawsuit, the part of the Fagen Defendants' Motion To Dismiss seeking dismissal for improper venue pursuant to Rule 12(b)(3) is denied.

### ii. *Venue with Turley absent*

Even if the circumstances were as the Fagen Defendants envisioned that they would be at this point in the litigation—that is, with Turley dismissed from the case for lack of personal jurisdiction over him—venue would still be proper in this forum. Although the Fagen Defendants argue that, in Turley's absence, Catipovic cannot establish that this district is a proper venue pursuant to former § 1391(a)(2)—or any other subdivision of former § 1391(a)—I disagree.

---

[7] Were it necessary for me to make such a determination, I would find that the same two-step analysis set out in *Bartile Roofs* and applied in subsection (ii) below would lead to the conclusion that venue is proper pursuant to former § 1391(a)(2), not former § 1391(a)(3).

Applying the two-step analysis of the Tenth Circuit Court of Appeals in *Bartile Roofs* to a challenge to venue under former § 1391(a)(2), I consider, first, "the nature of the plaintiff's claims and the acts or omissions underlying those claims," *see* 618 F.3d at 1166; *accord Setco*, 19 F.3d at 1281 (explaining that matters of importance to the plaintiff's suit are a "substantial part" of the events giving rise to the plaintiff's claims), keeping in mind that, under Eighth Circuit law, only the activities of the defendants are relevant. *See Woodke*, 70 F.3d at 985. The Fagen Defendants argue that the wrongful act central to Catipovic's unjust enrichment claim was allegedly *using* information and ideas that Catipovic provided without compensating him, but that such conduct did not occur until 2008, when Turley allegedly decided to go forward without Catipovic, and that conduct did not occur in Iowa. Whether the claim is defined by Minnesota law, as the Fagen Defendants contend, or by Iowa law, as Catipovic contends, the Fagen Defendants have failed to consider all of the relevant conduct of a defendant on such a claim.

As the Eighth Circuit Court of Appeals recently explained, "To establish a claim of unjust enrichment under Minnesota law, a plaintiff must show the defendant 'knowingly received or obtained something of value for which the defendant in equity and good conscience should pay.'" *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, ___ F.3d ___, ___, 2012 WL 1758822, *6 (8th Cir. May 18, 2012) (quoting *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 553–54 (8th Cir. 2008)). Similarly, the Eighth Circuit Court of Appeals has explained, "To recover for unjust enrichment [under Iowa law], [the plaintiff] must show: '(1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012)

(quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001)). Thus, even focusing solely on the conduct of the defendants, *see Woodke*, 70 F.3d at 985 (concluding that Congress meant to require courts to focus on relevant activities of the defendant, not activities of the plaintiff), conduct that is an act or omission underlying the unjust enrichment claims, *see Bartile Roofs*, 618 F.3d at 1166 (considering, first, "the nature of the plaintiff's claims and the acts or omissions underlying those claims"), or a substantial part of events giving rise to an unjust enrichment claim, *see Setco*, 19 F.3d at 1281 (explaining that matters of importance to the plaintiff's suit are a "substantial part" of the events giving rise to the plaintiff's claims), is the defendants' *receipt* of a benefit or something of value from the plaintiff.

Next, I must consider "whether substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf Ins. Co*, 417 F.3d at 357). Taking Catipovic's allegations as true and viewing the evidence in the light most favorable to Catipovic, *see, e.g., Aggarao*, 675 F.3d at 36, Catipovic provided, and the defendants received, a substantial part of the allegedly valuable benefits, services, and information from Catipovic while Catipovic, Wendland, and all of the defendants were in Iowa in 2007. This is so, whether or not other forums had greater contacts. *Setco*, 19 F.3d at 1281. Catipovic has alleged, and the record so far presented suggests, that all of the defendants received something of value from him *in Iowa* when he began to provide information about ethanol production in Eastern Europe and the specific business plan and other information that would make doing so feasible during the 2007 meeting in Mason City, Iowa. The Fagen Defendants' assertion that the conduct giving rise to Catipovic's unjust enrichment claim did not occur until 2008, and then in Ireland or Eastern Eurpoe, when Turley allegedly decided to go forward without Catipovic and Wendland, is simply wrong. The question for an unjust enrichment claim against the

35

Fagen Defendants would be when *they* engaged in conduct that is an act or omission underlying the unjust enrichment claim against them or that is a substantial part of the events giving rise to the unjust enrichment claim against them, not when Turley engaged in such conduct. Moreover, no formulation of a cause of action for unjust enrichment that has been drawn to my attention suggests that the decision or intention not to compensate the plaintiff for his services or the benefits that he provided, or the failure to compensate the plaintiff for his services or the benefits that he provided, must necessarily have occurred at the same time as the defendant received that benefit or those services.[8]

Thus, substantial events material to Catipovic's unjust enrichment claims occurred in Iowa, and this district is a proper forum pursuant to former § 1391(a)(2). *Bartile Roofs*, 618 F.3d at 1166. Therefore, the Fagen Defendants would not be entitled to dismissal of this action for improper venue, even if Turley's motion to dismiss for lack of personal jurisdiction had been granted.

### d. Summary

The Fagen Defendants are not entitled to dismissal for improper venue, whether I consider the motion in the circumstances as they now exist, with Turley remaining a party to this action, or in the circumstances that the Fagen Defendants envisioned, with Turley dismissed from the action. The Rule 12(b)(3) part of the Fagen Defendants' Motion To Dismiss is denied.

---

[8] Catipovic does not assert a "fraud" claim, which might require him to prove that the defendants had the intention to deprive him of something of value at the time that they received that thing of value.

### C.    Failure To State A Claim

The Fagen Defendants assert that, if venue is proper in this forum, then Catipovic's unjust enrichment claim against them should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim against them on which relief can be granted. Catipovic disputes this second ground for pre-answer dismissal, as well.

#### 1.    Arguments of the parties

In support of the Rule 12(b)(6) part of their motion, the Fagen Defendants argue that, to plead a claim of unjust enrichment under Minnesota law, the plaintiff must plead more than that the defendant benefitted from the efforts of the plaintiff, but must allege that the defendant was unjustly enriched in the sense that the term "unjustly" means "illegally" or "unlawfully." They also argue that, under Minnesota law, the plaintiff must plead that he provided the benefits to the defendant "unknowingly or unwillingly." They argue that Catipovic voluntarily provided the services in question to them, so that the receipt of those benefits was not "unlawful," nor was it "unwilling" or "unknowing." They assert that Catipovic's later dispute with Turley over the shareholders agreement had nothing to do with them.

Catipovic argues that he has stated an unjust enrichment claim against the Fagen Defendants, because that claim is governed by Iowa law, not Minnesota law. They argue that a choice of law is required, because there is a true conflict between Iowa law and Minnesota law, where Minnesota law requires "illegal" or "unlawful" conduct of the defendant for any enrichment to be "unjust," but Iowa law does not. Catipovic also argues that, under Iowa choice-of-law rules, which apply because Iowa is the forum state, this court must apply the "most significant relationship" test." Iowa is the forum with the "most significant relationship," Catipovic argues, because Iowa has an interest in regulating the conduct of persons within its territory and redressing injuries that

occurred there, where the events giving rise to his unjust enrichment claim occurred in Iowa. On the other hand, he argues that the facts alleged in his Amended Complaint show no relationship between the state of Minnesota and Catipovic's claim of unjust enrichment, other than the Fagen Defendants' residence in Minnesota. Catipovic also argues that his unjust enrichment claim is properly pleaded under Iowa law. He points out that he has alleged that the Fagen Defendants received a benefit by receiving his services; that they were enriched by using those services without compensating him, to his expense; and that it is unjust for the Fagen Defendants to use his services without compensating him.

In reply, the Fagen Defendants argue that, if Turley is dismissed, venue is improper in this forum; the case is transferable to Minnesota for improper venue pursuant to 28 U.S.C. § 1406(a); the law of the transferee state, Minnesota, applies when a case is transferred pursuant to § 1406(a); and Catipovic concedes that he cannot state an unjust enrichment claim under Minnesota law. In the alternative, they argue that Catipovic has failed to state a claim of unjust enrichment under Iowa law. This is so, they argue, because they deny that they used Catipovic's services, where he was a doctor and they were experts in the ethanol plant industry, and because he voluntarily provided the information and services in question for his own purposes, to woo them to participate in the project, and that he could have protected himself in contractual negotiations, but he failed to do so.

## 2.    Analysis

### a.    Applicable standards

Rule 12(b)(6) provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[9]  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)

___

[9] Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules."  FED. R. CIV. P. 12, advisory committee's note.  The advisory committee notes make it clear that the "changes are to be stylistic only."  *Id.*  The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Thus, the amendment did not change the standards for a Rule 12(b)(6) motion.

(hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

"In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir.

2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010));
*accord Ashanti*, 666 F.3d at 1151. Even after *Bell Atlantic*, the court must still accept
as true the plaintiff's well pleaded allegations. *Id.*; *Parkhurst*, 569 F.3d at 865 (citing
*Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at
387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v.
Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the
complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire
Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other
hand, "[w]here the allegations show on the face of the complaint that there is some
insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton
v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v.
Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a
discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

Thus, what is ordinarily required is pleading of allegations sufficient to raise a
plausible inference as to each element of a claim or cause of action. *See Iqbal*, 556
U.S. at 678-79; *accord Hamilton*, 621 F.3d at 818-19; *Parkhurst*, 569 F.3d at 865 ("To
survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to
raise a right to relief above the speculative level. . . .'" (quoting *Bell Atlantic*, 550 U.S.
at 555)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[T]he complaint must allege 'only
enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell
Atlantic*, 550 U.S. at 570)). Moreover, allegations that raise plausible inferences of
alternative scenarios, one that satisfies a particular element and one that does not satisfy
that element, are sufficient to state a claim, because "[w]hich inference will prove to be
correct is not an issue to be determined by a motion to dismiss." *Hamilton*, 621 F.3d
at 819 (noting that the plaintiffs' complaint raised plausible inferences of both employee
and independent contractor status, in support of the "employee status" element of his

41

claim that the purported employer negligently breached its duty to maintain a safe workplace for its employees).

### b. *Application of the standards*

#### i. *Elements of the claim*

A key issue for determining whether Catipovic has stated an unjust enrichment claim upon which relief can be granted is the law applicable to that claim. Because I have concluded that venue is proper in Iowa, § 1406(a), which provides for transfer to a proper forum, does not apply. *See* 28 U.S.C. § 1406(a). Because the action is not "transferable" pursuant to § 1406(a), there is no transfer that calls for the application of the law of the transferee court. *Compare Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellshaft, MBH*, 495 F.3d 582, 585-86 (8th Cir. 2007); *Wisland v. Admiral Bev. Corp.*, 119 F.3d 733, 736 (8th Cir. 1997). Thus, the Fagen Defendants' argument for the application of Minnesota law to this claim fails. The Fagen Defendants have not disputed Catipovic's argument that, if this is a proper forum, Iowa's choice-of-law rules would require the application of Iowa law. Thus, the only remaining question is whether or not Catipovic has stated an unjust enrichment claim under Iowa law on which relief can be granted.

As the Eighth Circuit Court of Appeals has explained, in a case applying Iowa law,

> "Unjust enrichment is a doctrine that 'evolved from the most basic legal concept of preventing injustice.'" *In re Estate of Roethler*, 801 N.W.2d 833, 845 (Iowa 2011) (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001)). "The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *Palmer*, 637 N.W.2d at 154.

*Lakeside Feeders, Inc.*, 666 F.3d at 1112; *Waldner v. Carr*, 618 F.3d 838, 848 (8th Cir. 2010) ("The theory of unjust enrichment 'is premised on the idea that it is unfair to allow a person to benefit from another's services when the other expected compensation.' *State Pub. Defender v. Iowa Dist. Court for Woodbury County*, 731 N.W.2d 680, 684 (Iowa 2007). Such implied contracts do not arise from the traditional bargaining setting but 'rest on a legal fiction arising from considerations of justice and the equitable principles of unjust enrichment.' *Hunter v. Union State Bank*, 505 N.W.2d 172, 177 (Iowa 1993)."). The Iowa Supreme Court has explained that "unjust enrichment is a broad principle with few limitations." *State ex rel. Palmer*, 637 N.W.2d at 155.[10]

Thus, as noted above, "[t]o recover for unjust enrichment [under Iowa law], [the plaintiff] must show: '(1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" *Lakeside Feeders, Inc.*, 666 F.3d at 1112 (quoting *State ex rel. Palmer*, 637 N.W.2d at 149); *Waldner*, 618 F.3d at 648 (stating the elements in a similar way (quoting *State ex rel. Palmer*, 637 N.W.2d at

_____

[10] In *State ex rel. Palmer*, the Iowa Supreme Court explained, further,

> We have never limited this principle to require the benefits to be conferred directly by the plaintiff. *See Iconco v. Jensen Constr. Co.*, 622 F.2d 1291, 1301-02 (8th Cir.1980) (plaintiff not required to show he directly conferred benefit on defendant under Iowa law). Instead, benefits can be direct or indirect, and can involve benefits conferred by third parties. *See* I Palmer, § 1.7, at 40-41, 44. The critical inquiry is that the benefit received be at the expense of the plaintiff. *See Guldberg v. Greenfield*, 259 Iowa 873, 878, 146 N.W.2d 298, 301 (1966).

*State ex rel. Palmer*, 637 N.W.2d at 155.

43

154-55)).  Iowa courts, including this one, have sometimes added a fourth element, that there must be no at-law remedy available to the plaintiffs.  *See Union Pac. R. Co. v. Cedar Rapids and Iowa City R. Co.*, 477 F. Supp. 2d 980, 1003 (N.D. Iowa 2007) (citing *Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000)).  However, the Iowa Supreme Court has explained,

> The adequacy of a legal remedy is a general limitation on the exercise of equity jurisdiction and is properly considered when restitution is sought in equity, but no independent principle exists that restricts restitution to cases where alternative remedies are inadequate.  *See* I Palmer, § 1.6, at 33-34.

*State ex rel. Palmer*, 637 N.W.2d at 154 n.2 (noting the addition of this fourth element in *Iowa Waste Sys., Inc.*, 617 N.W.2d at 30).

### ii.  *Pleading of the claim*

I find that Catipovic has made more than "a formulaic recitation of the elements of [an unjust enrichment] cause of action" under Iowa law.  *See Bell Atlantic*, 550 U.S. at 555.  He has also pleaded allegations sufficient to raise a plausible inference as to each element of his claim.  *See Iqbal*, 556 U.S. at 678-79.

More specifically, as to the first element, that the Fagen Defendants were enriched by the receipt of a benefit, *Lakeside Feeders, Inc.*, 666 F.3d at 1112, Catipovic has alleged that "Turley and Fagen used information, resources and contacts, including the logo, business and financial plans and the services of the commercial real estate expert provided to them by Catipovic and Wendland to pursue the Ethanol Europe project without Catipovic and Wendland," Amended Complaint at ¶ 25; that Turley and the Fagen Defendants "continue to pursue the Eastern Europe ethanol project initially presented to them by Catipovic and Wendland," *id.* at ¶ 28; and that Turley and the Fagen Defendants "received Catipovic and Wendland's services, including:  the original idea to build ethanol plants in Eastern Europe, the identification

of a commercial real estate expert in Eastern Europe, introduction to the ethanol industry and an ethanol plant manufacturer (for Turley), a business plan, financial projections, logo, etc.," and that "Defendants used these services, well-recognized in the ethanol industry as valuable services . . . ," *id.* at ¶ 34. As to the second element, that the enrichment was at Catipovic's expense, *Lakeside Feeders, Inc.*, 666 F.3d at 1112, Catipovic has alleged that Turley and the Fagen Defendants used his services and the information that he provided "without compensating Wendland and Catipovic." Amended Complaint at ¶ 34. As to the third element, that it is unjust to allow the defendant to retain the benefit under the circumstances, *Lakeside Feeders, Inc.*, 666 F.3d at 1112, Catipovic has not only pleaded, baldly, that "Defendants will be unjustly enriched unless they are ordered to compensate Catipovic for the valuable services he provided," Amended Complaint at 35, but that the services he provided are "well-recognized in the ethanol industry as valuable services," *id.* at ¶ 34, and that there is an "industry standard compensation for the work he performed and the value he provided to the Defendants," *id.*, Count II: Unjust Enrichment (prayer for relief), and that the Fagen Defendants have not paid him any compensation. *Id.* at ¶ 34.

In short, the allegations here do *not* "show on the face of the complaint that there is some insuperable bar to relief," justifying dismissal of the unjust enrichment claim against the Fagen Defendants under Rule 12(b)(6). *Benton*, 524 F.3d at 870 (stating this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

### iii.    *The Fagen Defendants' further challenges*

The Fagen Defendants contend that dismissal of the unjust enrichment claim against them is nevertheless appropriate, because they deny that they used Catipovic's services, where he was a doctor and they were experts in the ethanol plant industry, and because Catipovic voluntarily provided the information and services in question for

his own purposes, to woo them to participate in the project, and he could have protected himself in contractual negotiations, but he failed to do so. I disagree.

First, the Fagen Defendants' mere denial that they used Catipovic's services is simply of no moment, where, on a Rule 12(b)(6) motion to dismiss, I must not only accept as true Catipovic's well-pleaded allegations, *Illig*, 652 F.3d at 976, but "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert*, 514 F.3d at 806. Even though Catipovic is a medical doctor, he alleges that he had developed expertise in the application of the principles of ethanol production in Iowa to Eastern Europe, based on his initial knowledge and understanding of the agricultural and environmental similarities between Iowa and Eastern Europe and his subsequent investigations. *See, e.g.*, Amended Complaint at ¶¶ 8, 10, and 11. At best, the Fagen Defendants' denial that they used Catipovic's services raises a factual issue that requires development in discovery and then, perhaps, testing on a motion for summary judgment based on a fully developed record, or, perhaps, testing in the crucible where credibility can be judged, a jury trial.

Equally unavailing are the Fagen Defendants' assertions that Catipovic voluntarily provided the services in question for his own purposes, to woo them to participate in the project, and that he could have protected himself in contractual negotiations, but he failed to do so. I find that these are essentially fact-driven issues going to the question of whether the circumstances are such that it is unjust to allow the defendant to retain the benefit that they received from him, under the circumstances, *Lakeside Feeders, Inc.*, 666 F.3d at 1112, which I believe are inappropriate for determination on a motion to dismiss. Again, on a Rule 12(b)(6) motion to dismiss, I must take as true Catipovic's allegations suggesting that it is unjust for the Fagen Defendants to retain the benefits that they received from him without compensating him. *Illig*, 652 F.3d at 976. Furthermore, the cases that the Fagen Defendants cite for

the proposition that such conduct on Catipovic's part could defeat his unjust enrichment claim involved a developed summary judgment record or a fully-developed trial record. *See Union Pac. R. Co.*, 477 F. Supp. 2d at 1003 (finding no genuine issue of material fact, on a motion for summary judgment, that "any supposed injustice is, again, further mitigated by the fact that UP could have used the terms of the operating agreement eventually negotiated between UP and CRANDIC to recoup some of the costs of the construction of the Fairfax Yard" that UP was trying to recover by way of an unjust enrichment claim); *In re Petersen*, 273 B.R. 586, 592 (Bankr. N.D. Iowa 2002) (observing, "Iowa courts seem especially reluctant to find 'unjust enrichment' when parties have voluntarily placed themselves in a situation or have failed to take action to put themselves in a better situation," and holding after trial that the party claiming unjust enrichment had considered, but decided not to insist on, a mortgage to secure her interest, and that "[t]his court should not now improve her bargain by providing security that she herself knowingly elected not to take").

### c.    Summary

Whatever subsequent development of the record may ultimately show about the merits of Catipovic's unjust enrichment claim against the Fagen Defendants, Catipovic *has* stated such a claim under Iowa law upon which relief can be granted in his Amended Complaint. The Rule 12(b)(6) part of the Fagen Defendants' Motion To Dismiss is denied.


## III.    CONCLUSION

I do not find merit in the Rule 12(b) motions to dismiss by the defendants. Rather, upon the foregoing,

1.     Defendant Turley's April 23, 2012, Motion To Dismiss Plaintiff's First Amended Complaint For Lack Of Personal Jurisdiction (docket no. 16), pursuant to Rule 12(b)(2), is **denied**; and

2.     The Fagen Defendants' April 30, 2012, Motion To Dismiss Plaintiff's Amended Complaint (docket no. 18), pursuant to Rule 12(b)(3), for improper venue, and Rule 12(b)(6), for failure to state a claim on which relief can be granted, is **denied in its entirety**.

**IT IS SO ORDERED**.

**DATED** this 8th day of June, 2012.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA