# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

BRANIMIR CATIPOVIC,

    Plaintiff,

vs.

MARK TURLEY, RONALD FAGEN, and FAGEN, INC.,

    Defendants.

No. C 11-3074-MWB

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING MOTION FOR LEAVE TO AMEND**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION*.................................................................*2*

*II.  LEGAL ANALYSIS* .............................................................*3*
    *A.  Standard Of Review For Magistrate Judges' Orders On Non-Dispositive Matters*........................................*3*
    *B.  Standards For Leave To Amend* ......................................*4*
        *1.  Rule 15 standards* ................................................*4*
        *2.  Rule 9(b) standards for pleading fraud* .............................*5*
    *C.  Analysis*.................................................................*7*
        *1.  Application of the correct legal standards* ..........................*7*
        *2.  Misapplication of law or clearly erroneous consideration of pleadings*...............................................*8*
            *a.  Consideration of all of Catipovic's factual allegations*......................................................*9*
            *b.  Application of the standards to the pleadings*.................*9*
    *D.  Catipovic's Request For Discovery* ............................*11*

*III.  CONCLUSION* ................................................................*13*

## I. INTRODUCTION

Plaintiff Branimir Catipovic, a former Iowa resident, seeks to recover damages from the failure of an alleged partnership to develop ethanol production facilities in Eastern Europe. In his original Complaint (docket no. 1), filed December 29, 2011, Catipovic asserted claims for breach of contract and unjust enrichment against an Irish citizen, defendant Mark Turley, the principal investor in the partnership, and damages for unjust enrichment from a Minnesota citizen and a Minnesota company, Ronald Fagen and Fagen, Inc., which had been engaged to build the ethanol plants. On April 12, 2012, Catipovic filed his Amended Complaint (docket no. 11), in response to motions to dismiss, clarifying that he is now domiciled in Massachusetts. On May 29, 2013, Catipovic filed a Motion For Leave To Amend Complaint (docket no. 60), seeking leave to file a Second Amended Complaint adding a fraud claim against Turley. That motion was denied on July 2, 2013, by Order (docket no. 63) of Chief United States Magistrate Judge Jon S. Scoles.

This matter is now before me on Catipovic's Objections To Order Denying Motion For Leave To Amend (Objections) (docket no. 64), filed July 16, 2013. Catipovic argues that Judge Scoles's Order was clearly erroneous and contrary to law, because Judge Scoles too narrowly applied the pleading standard governing fraud claims and failed to take into account facts—including the timeline of events—alleged by Catipovic that sufficiently plead a basis for plausibly inferring Turley's lack of intent to keep his promises at the time that Turley made them. Turley filed a Response To Plaintiff's Objections To Order Denying Motion For Leave To Amend (Response) (docket no. 66) on July 23, 2013. Turley argues, first, that Judge Scoles correctly concluded that Catipovic's fraud claim was "futile," because it pleads only broken promises, but fails to plead facts suggesting an intent to break those promises when they

2

were made. Turley argues that I can also affirm denial of Catipovic's Motion For Leave To Amend on grounds that Judge Scoles did not reach, specifically, that the fraud claim is time-barred and that the belated amendment would unduly prejudice Turley. I find Catipovic's Objections fully submitted on the written submissions.

## II. LEGAL ANALYSIS

### A. *Standard Of Review For Magistrate Judges' Orders On Non-Dispositive Matters*

The pertinent parts of the statute and rules authorizing the powers of a magistrate judge, 28 U.S.C. § 636(b)(1)(A), Rule 72(a) of the Federal Rules of Civil Procedure, and N.D. IA. L.R. 72.1, all provide for review by a district judge of a magistrate judge's order on non-dispositive motions assigned to him or her to which objections have been filed. Where a litigant does not file a timely objection to a magistrate judge's order, triggering review by a district judge, the litigant "may not challenge the [magistrate judge's] order on appeal." *McDonald v. City of Saint Paul*, 679 F.3d 698, 709 (8th Cir. 2012).

Section 636(b)(1)(A) and Rule 72(a) both specify that such review allows the district judge to modify or set aside any parts of the magistrate judge's order that are "clearly erroneous or contrary to law." *See also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law." (citing § 636(b)(1)(A)). Although the Eighth Circuit Court of Appeals does not appear to have clarified the meaning of "clearly erroneous" in the context of a district court's review of a magistrate judge's ruling, the appellate court's formulation of the "clearly erroneous" standard for its own review of a lower court's ruling is as follows:

> A district court clearly errs if its findings are "not supported by substantial evidence in the record, if the finding[s are] based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made." *Ostenfeld ex rel. Estate of Davis v. Delo*, 115 F.3d 1388, 1393 (8th Cir. 1997).

*Story v. Norwood*, 659 F.3d 680, 685 (8th Cir. 2011). Like other courts, I have read "contrary to law" within the meaning of Rule 72(a) (and, hence, § 636(b)(1)(A)) to mean failure to apply or misapplication of relevant statutes, case law, or rules of procedure. *See United States v. Melton*, ___ F. Supp. 2d ___, 2013 WL 2456015, *3 (N.D. Iowa June 6, 2013) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

### B. Standards For Leave To Amend

#### 1. Rule 15 standards

The relevant legal standards for Judge Scoles's disposition of Catipovic's Motion For Leave To Amend are, in the first instance, the standards under Rule 15 of the Federal Rules of Civil Procedure. I have noted that "a *pre-dismissal* request for leave to amend, that is, one not meeting the timing requirements of Rule 15(a)(1) [for amendment 'as a matter of course'], is subject to a liberal, 'freely given' standard pursuant to Rule 15(a)(2)." *Plymouth Cnty., Iowa, ex rel. Raymond v. MERSCORP., Inc.*, 287 F.R.D. 449, 455 (N.D. Iowa 2012) (emphasis in the original). Although the "freely given" standard is generous, it does not give plaintiffs "'an absolute or automatic right to amend.'" *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (quoting *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)). For example,

> [a] district court's denial of leave to amend a complaint may be justified if the amendment would be futile. *Crest Const.*

> *II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir.2011). And while Rule 15 is broadly construed to allow amendments, district courts need not "indulge in futile gestures." *Holloway v. Dobbs*, 715 F.2d 390, 392–93 (8th Cir.1983) (per curiam).

*Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013).[1] More specifically, leave to amend may be denied as futile if a proffered complaint fails to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Roop*, 559 F.3d at 823; *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557-58 (8th Cir. 2006) (agreeing with the district court that a proposed amendment did not satisfy the heightened pleading requirements of Rule 9(b), so that the proposed amendment was properly denied as futile); *see also United States ex rel. Raynor v. National Rural Utils. Co-op. Fin. Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) (holding that the district court properly denied leave to amend as futile, where the plaintiff did not explain how he would amend the complaint to add the particularity required by Rule 9(b)).

### 2. *Rule 9(b) standards for pleading fraud*

Turning, therefore, to the standards for pleading fraud, the Eighth Circuit Court of Appeals has explained that, pursuant to Rule 9(b),

> "In alleging fraud … a party must state with particularity the circumstances constituting [the] fraud…." Fed.R.Civ.P. 9(b). The plaintiff must plead "such matters as the time, place and contents of false representations, as well as the

---

[1] There are other grounds for denial of leave to amend not necessarily at issue here. *See generally Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) ("A district court may deny leave to amend 'if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008), with internal quotation marks omitted)).

5

> identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (quotation and citation omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (quotation and citation omitted).

*Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013). In addition, "'[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). Instead, "the complaint must provide a factual basis for allegations of scienter." *In re K-tel Int'l, Inc., Sec. Litig.*, 300 F.3d 881, 894 (8th Cir. 2002).

As to the scienter requirement for fraud under Iowa law, the Iowa Supreme Court has explained the inadequacy of "broken promises," as follows:

> The thrust of Smidt's claim is that Porter broke his promises only *later* when he learned she was pregnant.
>
>> When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or for equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent.
>
> *Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 29 (Iowa 1997).

*Smidt v. Porter*, 695 N.W.2d 9, 23 (Iowa 2005) (emphasis in the original). Consequently, the plaintiff must plead (and ultimately prove) that, at the time a promise was made, the promisor had not intended to keep the promise. *See Magnusson*, 560

6

N.W.2d at 29; *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987) ("Under Iowa law, a statement of intent to perform a future act is actionable if when made the speaker had an existing intention not to perform," [but] "in establishing the present intent not to perform, the fact the agreement was not performed does not alone prove the promissor did not intend keeping it when it was made." (internal citations and quotation marks omitted)); *see also Irons v. Community State Bank*, 461 N.W.2d 849, 853 (Iowa Ct. App. 1990) ("A statement of intent to perform a future act is actionable if the speaker had an existing intention not to perform." (citing *Robinson*)); *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 844 (N.D. Iowa 2004) ("[T]his court [has twice] concluded that, under Iowa law, a statement of intent to perform a future act is actionable if, when the statement is made, the speaker had an existing intent not to perform." (citing *Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 139 F. Supp. 2d 1071, 1104-06 (N.D. Iowa 2001), and *Brown v. North Central F.S., Inc.*, 987 F. Supp. 1150, 1157 (N.D. Iowa 1997)).

### C.    *Analysis*

#### 1.    *Application of the correct legal standards*

In his Order denying leave to amend for failure to meet the particularity requirements of Rule 9(b), Judge Scoles concluded that Catipovic had pleaded with particularity all of the circumstances of the fraud, but had not adequately pleaded fraudulent intent:

> [W]hile Turley may have breached an agreement with Catipovic, nothing in Catipovic's [amended] allegations supports an inference of fraudulent intent. Catipovic's claim that "Turley knew his representations were false" at the time they were made is conclusory and based on speculation. Catipovic has not pled any *facts* which would support a reasonable inference that Turley did not intend to perform

> when the promises were initially made. Accordingly, Count III of the proposed second amended complaint fails to meet the heightened pleading requirement of Rule 9(b) and would not survive a motion to dismiss. Therefore, the motion for leave to amend is futile.

Order (docket no. 63) at 13. From the statement of the applicable pleading rules, above, *see In re K-tel Int'l, Inc., Sec. Litig.*, 300 F.3d at 894 ("[T]he complaint must provide a factual basis for allegations of scienter."); *Magnusson*, 560 N.W.2d at 29 (explaining that, under Iowa law, the plaintiff must allege and prove that the defendant did not have the intent to perform at the time that a promise was made for a fraud claim based on broken promises to lie), it is clear that Judge Scoles did not apply the *wrong* standard when making this determination. *See Melton*, ___ F. Supp. 2d at ___, 2013 WL 2456015 at *3 (reading the "contrary to law" within the meaning of Rule 72(a) (and, hence, § 636(b)(1)(A)) to mean, *inter alia*, failure to apply relevant statutes, case law, or rules of procedure). Thus, the question is whether Judge Scoles *misapplied* the applicable standard or clearly erred in considering the record. 28 U.S.C. § 636(b)(1)(A) (imposing a "clearly erroneous or contrary to law" standard of review); FED. R. CIV. P.72(a) (same); *see also Melton*, ___ F. Supp. 2d at ___, 2013 WL 2456015 at *3. (defining "contrary to law" as including "misapplication" of the law); *Story*, 659 F.3d at 685 (defining the "clearly erroneous" standard of review.).

### 2. *Misapplication of law or clearly erroneous consideration of pleadings*

I conclude that Judge Scoles did not do so. Catipovic contends that Judge Scoles read the Rule 9(b) standard "too narrowly" as to pleading of facts giving rise to an inference of intent not to perform at the time a promise was made, thus imposing an impossible standard, and failed to consider the factual pleadings that he did make, which he argues are adequate to support an inference of Turley's intent not to perform at the time that he made promises to build ethanol plants with Catipovic. I disagree.

### a. Consideration of all of Catipovic's factual allegations

First, it is clear that Judge Scoles did consider all of Catipovic's factual pleadings in reaching his decision. Catipovic argues that adequate factual allegations supporting an inference of Turley's intent not to perform at the time that Turley made promises are found in paragraphs 15-16, 21-26, and 38-44 of his proffered Second Amended Complaint. He contends that these allegations show only a short time from the promises, to their repudiation, to Turley's attempts to convince Wendland and the Fagen defendants to go forward without Catipovic, and to Turley and Fagen's use of information and contacts obtained from Catipovic. Judge Scoles specifically considered these allegations, however; indeed, he carefully detailed the very allegations on which Catipovic relies. *See* Order (docket no. 63) at 6; *id.* at 9-10 (quoting paragraphs 38-44 of the proffered Second Amended Complaint).

### b. Application of the standards to the pleadings

Nor did Judge Scoles misapply the applicable pleading standards in evaluating the sufficiency of these allegations. Judge Scoles explained,

> The Court concludes that Caitpovic's allegations supporting his claims that Turley "knew his representations were false" [when made] are entirely conclusory in nature. For example, Catipovic asserts that after Turley represented that Catipovic and Wendland would have a 20% equity stake, he "set about attempting to secure the profits from the project for himself and others." Catipovic does not state *what* attempts were made, however, or *when* they were made. Similarly, Catipovic asserts that after obtaining critical information, Turley attempted to dilute Catipovic's ownership interest by "pressing" him to reduce his equity stake. Again, Catipovic does not describe what "attempts" were made by Turley, or when. The only specificity provided by Catipovic is his allegation that "in February 2008, Turley attempted to eliminate Catipovic's interest in the project by approaching Wendland, in an attempt to move

9

> forward without Catipovic." Even *if* the allegation that Turley "approached" Wendland is sufficiently specific, however, it apparently occurred in February 2008—well after Turley first made the allegedly fraudulent representations in June or July 2007.

Order (docket no. 63) at 10-11 (footnote citations omitted; emphasis in the original). Judge Scoles also considered the import of these allegations of "broken promises," specifically in light of the timeline that Catipovic had alleged, *see id*. at 11-12, and concluded—quite properly, in my view—that "[t]he facts set forth above, if true, suggest that Turley breached an agreement. They do not, however, 'give rise to a strong inference of fraudulent intent.'" *Id*. at 12 (quoting *Brown*, 987 F. Supp. at 1157). Judge Scoles found that there were no facts pleaded that suggested that Turley would have been unable to perform the parties' agreement or that he had *already* undertaken action that was inconsistent with his commitments. *Id*. at 13 (quoting *Brown*, 987 F. Supp. at 1158). I agree.

Catipovic now asserts that the time between the promises and the breach, as alleged, is sufficiently short, and that there was no change of circumstances between reaffirmation of the agreement in February 2008 and Turley's abrupt repudiation of the agreement just days later, to support an inference of intent not to keep the promises when made. He contends that these events occurred in a more compressed timeframe than the Iowa Supreme Court found sufficient to support a jury's finding of fraudulent intent in *Robinson*, 412 N.W.2d at 566. As Turley points out, however, the Iowa Supreme Court did not base its conclusion in *Robinson* solely on an allegation of timing, but on other evidence, including evidence that the franchisor had begun engaging in solicitation of other potential franchisees *at the same time* that he was assuring the plaintiff that he was not doing so, but there are no such allegations here that Turley was assuring Catipovic of his desire to continue with their agreement *at the*

*same time* that he was actively attempting to pursue the objectives of the agreement without Catipovic. The proffered Second Amended Complaint nowhere alleges that Turley's actions to pursue building of ethanol plants in Eastern Europe without Catipovic occurred immediately after entering into the parties' initial agreement in 2007 or before the alleged reaffirmation of the agreement in February 2008, but only *after* those events. It also expressly alleges that there were changes in circumstances prior to the alleged repudiation of the agreement in February 2008, because it acknowledges that the February 2008 meeting was "to address and negotiate issues that had arisen regarding the Ethanol Europe project." Proffered Second Amended Complaint at ¶ 21. Although Catipovic alleges that the parties "successfully addressed several outstanding issues and celebrated their continued commitment to the Agreement that they had reached in June 2007," *id.*, he does not allege that all issues were resolved or that a final agreement was reached. Thus, Turley's alleged repudiation of the parties' agreement just days later gives rise to an inference only of "second thoughts" and "broken promises," not fraudulent intent, *at the time of the February 2008 meeting*.

I conclude that Judge Scoles's denial of Catipovic's attempt to add a fraud claim against Turley was neither "clearly erroneous" nor "contrary to law," and, indeed, I agree with it.

### D. *Catipovic's Request For Discovery*

As a final "Hail, Mary," Catipovic contends that more specific information about Turley's fraudulent acts is known to Turley, but not necessarily to Catipovic at this time, because discovery is ongoing and Catipovic has not yet deposed the defendants. Catipovic contends that additional facts supporting Turley's intent not to perform at the time that Turley made the pertinent promises may only be discovered

11

from Turley and the other defendants, so that it is inequitable to deny his Motion For Leave To Amend based on lack of specificity in his allegations.

The Eighth Circuit Court of Appeals construed such an argument as a request to relax Rule 9(b)'s heightened pleading requirements by allowing general pleading of a fraud claim at the outset, then "filling in the blanks" following discovery. *See Joshi*, 441 F.3d at 559 (*qui tam* action). The court rejected that argument, however, observing that "neither the Federal Rules nor the [False Claims Act (FCA)] offer any special leniency" under the circumstances where the plaintiff does not have insider access to pertinent information, and held that "the district court did not err in refusing to relax Rule 9(b)'s pleading requirements and allow discovery by [the plaintiff]." *Id.* at 560.[2] Not only do I find no authority for such a procedure here, I find no reason for it. Catipovic has had more than a year-and-a-half to conduct discovery, which could reasonably have included the depositions of the defendants that he admits that he has not yet conducted, as well as earlier discovery of information from Mr. Wendland. Furthermore, if Catipovic believed that additional discovery would be helpful to meet

---

[2] Catipovic asserts that, in *Abels v. Farmers Commodities Corp.*, 259 F.3d 910 (8th Cir. 2001), the court found that pleading fraud with particularity may be impracticable, when the plaintiff is not a party to the fraudulent acts. Catipovic reads too much into *Abels*. In *Abels*, the court actually held that the plaintiffs had adequately pleaded the "time, place, and contents of false representations, as well as the identity of the persons making the misrepresentations and what was obtained or given up thereby," but that they were not required to plead with such specificity the use of the mail or telephone in a mail fraud or wire fraud claim, particularly where the fraudulent representations were not themselves conveyed by mail or wire. *Abels*, 259 F.3d at 920-21. It was in this context that the court concluded that "the plaintiffs are surely correct that a court cannot reasonably expect highly specific allegations before allowing at a least brief discovery period" concerning use of the mail and wires between a defendant and non-parties. *Id.* at 921. The decision in *Abels* says nothing about allowing discovery concerning the essential elements of the *fraud* rather than the factual circumstances that establish federal *jurisdiction* over a claim, such as use of the mail or wire in a mail fraud or wire fraud claim.

the "particularity" requirements for pleading a fraud claim or would otherwise confirm the factual basis for such a claim, after he purportedly only recently learned facts about Turley's overtures to Mr. Wendland in late-February 2008 to go forward with the project without Catipovic, he could have moved for an extension of the deadline to amend to match the discovery deadline.

### III. CONCLUSION

In the absence of adequate allegations to satisfy the requirements for a fraud claim under Iowa law and the pleading requirements of Rule 9(b) and applicable case law, Judge Scoles properly concluded that the proffered amendment was "futile" and properly denied leave to amend. *See Raynor*, 690 F.3d at 958; *Roop*, 559 F.3d at 823; *Joshi*, 441 F.3d at 557-58. Indeed, had I been presented with Catipovic's proffered amendment in the first instance, I would have denied it on the same grounds. Like Judge Scoles, I find it unnecessary to reach Turley's alternative grounds for denying leave to amend, that is, untimeliness of the fraud claim and prejudice to Turley.

THEREFORE, Catipovic's July 16, 2003, Objections To Order Denying Motion For Leave To Amend (docket no. 64) are **overruled**, and the July 2, 2013, Order (docket no. 63) of Chief United States Magistrate Judge Jon S. Scoles, denying Catipovic's May 29, 2013, Motion For Leave To Amend Complaint (docket no. 60), is **affirmed**.

**IT IS SO ORDERED**.

**DATED** this 30th day of July, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA