**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

BRANIMIR CATIPOVIC,

          Plaintiff,

vs.

MARK TURLEY, ROLAND FAGEN,
and FAGEN, INC.,

          Defendants.

No. C 11-3074-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING MOTIONS IN
LIMINE**

*FILED UNDER SEAL*

_____

**TABLE OF CONTENTS**

I.    **INTRODUCTION**.................................................................3

II.   **LEGAL ANALYSIS** .......................................................... 4
    A.    *Overlapping Challenges* ............................................. 4
        1.    *Opinions of the plaintiff's expert* ........................ 4
            *a.*    *Arguments of the parties* ....................... 4
            *b.*    *Analysis* ......................................... 6
        2.    *Evidence concerning the Dunafoldvar Ethanol
            Facility*................................................ 11
            *a.*    *Turley's challenge* ............................. 12
            *b.*    *The Fagen Defendants' challenge* ........................... 15
            *c.*    *Catipovic's challenge* ........................... 18
        3.    *Unpleaded claims*......................................... 19
            *a.*    *Arguments of the parties* ..................... 19
            *b.*    *Analysis* ....................................... 20
        4.    *Undisclosed damages* ..................................... 21
            *a.*    *Arguments of the parties* ..................... 21
            *b.*    *Analysis* ....................................... 22
        5.    *Relative wealth*......................................... 24
            *a.*    *Arguments of the parties* ..................... 24
            *b.*    *Analysis* ....................................... 25

        6.    Settlement negotiations ................................................. 27
        7.    *Turley's October 2012 letter to Wendland* .......................... 28
              a.    *Arguments of the parties* ............................... 28
              b.    *Analysis* ............................................... 29
    B.   **Defendant Turley's Remaining Evidentiary Challenge** .................... 37
        1.    Mr. Murphy's travel restrictions ..................................... 37
        2.    Arguments of the parties .............................................. 38
        3.    Analysis ................................................................ 39
    C.   **Catipovic's Remaining Evidentiary Challenges** ............................ 40
        1.    **Categories of evidence already addressed or not**
              **disputed** ............................................................ 40
        2.    **Expert testimony as to facts and inferences** ....................... 41
              a.    *Arguments of the parties* ............................... 42
              b.    *Analysis* ............................................... 42
        3.    **Expert or lay opinions on credibility of others** .................... 44
              a.    *Arguments of the parties* ............................... 44
              b.    *Analysis* ............................................... 44
        4.    **Statements or reports of persons not present to testify**
              **or be cross-examined** .............................................. 47
              a.    *Arguments of the parties* ............................... 47
              b.    *Analysis* ............................................... 47
        5.    **Demands for items that have not been the subject of**
              **discovery** .......................................................... 48
              a.    *Arguments of the parties* ............................... 48
              b.    *Analysis* ............................................... 48
    D.   **The Fagen Defendants' Remaining Evidentiary Challenges** ............. 49
        1.    **Roland Fagen's alleged offer of money to Wendland** ............ 49
              a.    *Arguments of the parties* ............................... 50
              b.    *Analysis* ............................................... 51
        2.    **The exclusivity agreement between Turley and the**
              **Fagen Defendants** .................................................. 55
              a.    *Arguments of the parties* ............................... 55
              b.    *Analysis* ............................................... 56
        3.    **References to filing of or rulings on pretrial**
              **motions.** ........................................................... 57

III.   **CONCLUSION** ............................................................. 58

## I.    INTRODUCTION

Plaintiff Branimir Catipovic, a Massachusetts citizen who is once again an Iowa resident, asserts claims in this case arising from the failure of an alleged partnership to develop ethanol production facilities in Eastern Europe.  Catipovic seeks to recover damages for breach of contract and unjust enrichment from defendant Mark Turley, an Irish investor now living in Hungary, and damages for unjust enrichment from defendant Roland Fagen, a Minnesota citizen, and his Minnesota company, defendant Fagen, Inc., which is engaged in commercial and industrial contracting and engineering services, focusing primarily on the ethanol plant industry.  Although the parties—along with non-party Walt Wendland—originally discussed building an ethanol plant in Osijek, Croatia, such a plant was never built.  Rather, Turley and the Fagen Defendants eventually collaborated in the building of an ethanol facility, now in operation, in Dunafoldvar, Hungary, (the Dunafoldvar Ethanol Facility) without Catipovic's (or Wendland's) involvement.

This case was set for a jury trial to begin on April 14, 2014, but the trial was recently continued to begin on November 12, 2014.  It is now before me on three evidentiary motions, filed in anticipation of the April 14, 2014, trial date:  (1) defendant Turley's February 28, 2014, Motion In Limine (docket no. 131), seeking to exclude eight categories of evidence; (2) plaintiff Catipovic's February 28, 2014, Motion In Limine (docket no. 132), seeking to exclude thirteen categories of evidence; and (3) the Fagen Defendants' February 28, 2014, Motion In Limine (docket no. 133), seeking to exclude eleven categories of evidence, some of which overlap categories of evidence that defendant Turley also seeks to exclude.  I believe that resolving the evidentiary motions now may facilitate trial preparations, notwithstanding that the trial has been continued for several months.  Moreover, further evidentiary motions are unlikely, because, in the

April 2, 2014, Trial Management Order, resetting the jury trial to begin on November 12, 2014, I expressly stated, "No further motions in limine shall be filed without permission of the court." Trial Management Order (docket no. 163), § V.

I find the parties' written submissions sufficient to address the evidentiary issues presented, without oral arguments. Therefore, I will resolve these motions on the parties' written submissions.

## II.    LEGAL ANALYSIS

The various motions now before me include challenges to several overlapping categories of evidence. Thus, rather than consider the evidentiary issues motion-by-motion, I will first consider the overlapping categories of challenged evidence, then turn to each party's remaining evidentiary challenges.

### A.    Overlapping Challenges

### 1.    Opinions of the plaintiff's expert

The first category of evidence that both defendant Turley and the Fagen Defendants seek to exclude is any testimony or opinions from Catipovic's expert, Michael Ott, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). To the extent that Mr. Ott may attempt to expand his opinions beyond those presented in his February 19, 2013, written report, Turley also seeks to exclude such expanded opinions as untimely.

#### a.    Arguments of the parties

Turley argues that, although Mr. Ott intends to offer opinions regarding the value of Catipovic's damages, his education was not in finance, business valuation, or economics, but in biochemistry. Turley argues that Mr. Ott's generalized experience in biotechnology does not qualify him as an expert on the relevant issues here. Turley also

argues that Mr. Ott's opinions in his February 19, 2013, written report are not supported by sufficient facts or data to be admissible, because they are based on data from the Center for Agricultural and Rural Development (CARD) at Iowa State University, concerning ethanol production in Iowa, not data from Hungary or even Europe. Turley argues that Mr. Ott's reliance on irrelevant data also demonstrates that his opinions are entirely speculative. Turley contends that the speculative nature of Mr. Ott's opinions is also apparent from his reliance on what Turley describes as "fictitious" numbers for production at the Dunafoldvar Ethanol Facility, before it became operational; his calculations of profits with no adequate explanation for how the factors used were derived; and his failure to consider the divergent cost structures between Iowa and Hungary. Turley points out that, at the time of his Motion In Limine, Mr. Ott had made no attempt to supplement his opinions with additional information about the actual performance of the Dunafoldvar Ethanol Facility, even though the defendants had provided some of that information to him. The Fagen Defendants essentially echo Turley's criticisms of Mr. Ott's opinions. They add that Mr. Ott has failed to itemize or explain any damages that can be claimed from the Fagen Defendants or any basis for his opinion that the value of the work that Catipovic provided to the defendants is $2 million.

In response to the defendants' challenges to his expert, Catipovic argues that Mr. Ott's CV demonstrates his extensive experience in the financial aspect of the renewable energy business, including ethanol. Catipovic argues that Mr. Ott's experience includes raising over $150 million for various renewable energy businesses, and that his current employment is with a venture capital group, performing due diligence on new business opportunities in renewable energy and making recommendations based on market strength and business models. Catipovic points out that Mr. Ott also provided an amended and supplemented expert report after the defendants filed their Motions In Limine and after they belatedly produced financial data from the Dunafoldvar Ethanol

Facility. Catipovic contends that the defendants' belated disclosures have allowed Mr. Ott to dispense with the data and market information from the United States market that he was forced to use when actual financial data from Europe was not available. Catipovic contends that the amended and supplemented report moots most of the defendants' criticisms of Mr. Ott's original opinions and demonstrates sufficient, not-speculative bases for his opinions. Catipovic also points out that the defendants criticize Mr. Ott's reliance on the same sort of information about United States ethanol production that the defendants used to tout their European ethanol project to prospective investors. Catipovic argues that, as to damages from unjust enrichment of the Fagen Defendants and Turley, Mr. Ott's opinions are adequate, because they are based on valuations of the contributions of sufficiently similar promoters. Finally, Catipovic contends that the weight to be given to his expert's opinions is for the jury to decide.

In reply, Turley argues that Mr. Ott still lacks the necessary qualifications to offer expert opinions in this matter, because of his lack of education or training in the field of business valuations or any specific experience with foreign business valuations. Turley also argues that Catipovic should not be allowed to offer untimely disclosed opinions that Mr. Ott has now concocted, because the defendants are not to blame for any delays in the disclosure of pertinent financial data, and because Mr. Ott waited too long to supplement his report in March 2014, after receiving some of the "new" information on which that report is based, which was disclosed in 2012 and 2013. The Fagen Defendants add that Mr. Ott has offered no adequate analysis to demonstrate the range of fees to which a promoter such as Catipovic might be entitled, but simply offers a conclusory opinion.

### b. Analysis

The defendants assert both "Rule 702" and "*Daubert*" challenges to Mr. Ott's opinions. Rule 702 provides that expert testimony should be admitted if (1) it is based

on "sufficient facts or data," (2) it "is the product of reliable principles and methods," and (3) "the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702; *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). As to the first requirement, "[a]n expert opinion cannot sustain a jury's verdict when it 'is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable. . . .'" *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)) (citing *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1108 (8th Cir. 1996) (a motion for judgment should have been granted because the expert opinion on causation was speculative)). To put it another way, "[e]xpert testimony that is speculative is not competent proof and contributes 'nothing to a legally sufficient evidentiary basis.'" *Id.* Thus, in *Concord Boat*, the Eighth Circuit Court of Appeals reasoned that, "[b]ecause of the deficiencies in the foundation of the opinion, the expert's resulting conclusions were 'mere speculation,'" and should have been excluded. *Id.*

First, I find that Mr. Ott's "credentials" are sufficient for him to offer expert testimony in this case. While it is true that Mr. Ott's *education* was in biochemistry, Catipovic has offered sufficient evidence that Mr. Ott has developed the necessary *expertise* from *experience* for him to offer helpful and reliable opinions at trial. Rule 702 of the Federal Rules of Civil Procedure expressly provides that an expert may be qualified "by knowledge, skill, experience, training, *or* education." FED. R. EVID. 702 (emphasis added). Moreover, the Eighth Circuit Court of Appeals has recognized that "'Rule 702 does not rank academic training over demonstrated practical experience.'" *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012) (quoting *United States v. Roach*, 644 F.3d 763, 764 (8th Cir. 2011) (per curiam)).

On the other hand, I agree with the defendants that Mr. Ott's original opinions, in his February 2013 report, based on data related to Iowa ethanol production, were not based on "sufficient facts or data" to be admissible, pursuant to Rule 702, in this case involving the development of an ethanol facility in Eastern Europe. Rather, those opinions were so speculative and so disconnected from issues in this case that they were not competent proof and contributed nothing to a legally sufficient evidentiary basis. *Concord Boat Corp.*, 207 F.3d at 1057.

That is not the end of the matter, however, because I conclude that Mr. Ott has now offered sufficient facts or data to support his conclusions *in his March 2014 amended and supplemented report*. I need not lay blame for the belated appearance of Mr. Ott's amended and supplemented report nor consider whether the amended and supplemented report is "untimely," where the trial has now been continued for several months, and the parties will have adequate opportunity to redepose Mr. Ott or otherwise to assess his "new" opinions sufficiently in advance of trial.

I turn, next, to the defendants' "*Daubert*" challenge. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court explained that the district court must perform a "gatekeeper" function, under Rule 702 of the Federal Rules of Evidence, so that only expert testimony that is relevant and reliable is admitted. 509 U.S. at 589.[1] The Eighth Circuit Court of Appeals has explained how the district court is to perform its "gatekeeper" function under *Daubert*, as follows:

---

[1]An evidentiary hearing is not required prior to a *Daubert* determination on expert evidence; rather, what is required is that the parties "have an adequate opportunity to be heard" before the court makes its decision. *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 761 n.3 (8th Cir. 2003). In this case, the defendants did not request an evidentiary hearing on their "*Daubert*" challenge to Mr. Ott's testimony, and I do not find that such a hearing is necessary. Indeed, it has long been my preference to

> First, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." [*Daubert*, 509 U.S. at 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469]. The Court cautioned that the trial court must focus "on [the] principles and methodology, not on the conclusions that they generate." *Id*. at 595, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. *Id*. at 592, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id*. at 591, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The Court, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), clarified that the district court's gatekeeper function applies to all expert testimony, not just testimony based in science. *Id*. at 147, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238.

*Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003). However, "[a]s the Supreme Court emphasized in *Daubert*, 509 U.S. at 595-96, 113 S.Ct. 2786, 125 L.Ed.2d 469, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003).

---

allow expert testimony at trial, subject to cross-examination, because I find that the majority of purported "*Daubert*" challenges to expert testimony really go to the weight, not the admissibility, of the expert's testimony. If I find at trial that an expert's opinions ultimately do not satisfy *Daubert* standards, I can always strike the expert's testimony and instruct the jury accordingly.

In this case, my "preliminary assessment," from my review of the submissions in support of and resistance to the defendants' motions to exclude Mr. Ott's opinions, is that the reasoning and methodology underlying the opinions *in Mr. Ott's March 2014 amended and supplemented report* are valid and that Mr. Ott's reasoning and methodology in that report can be applied to the facts at issue—even if I still find his factual basis somewhat "thin." *See Daubert*, 509 U.S. at 592-93 (first step in the court's "gatekeeper" function under Rule 702); *Kudabeck*, 338 F.3d at 860 (same). Although the defendants were justifiably unhappy with Mr. Ott's opinions *in his original February 2013 report*, their challenges to "factual basis" and "reasoning and methodology" are considerably less convincing as to Mr. Ott's *March 2014 amended and supplemented report*. Indeed, I find that, as to the amended and supplemented report, Catipovic has shown that Mr. Ott's reasoning and methodology are appropriate and that he has applied proper economic principles. Moreover, I find that his amended and supplemented opinions have an adequate factual basis—if just barely—including the sources of data that Catipovic has identified as belatedly disclosed by the defendants, such that submission of his opinions to a jury is warranted. I am also convinced that the proposed expert testimony, to the extent that it is based on the amended and supplemented report, is relevant and will aid the trier of fact. *Daubert*, 509 U.S. at 592 (second step in the analysis); *Kudabeck*, 338 F.3d at 860 (same). Plainly, Mr. Ott's testimony regarding valuations of ethanol plants (in Europe or the United States) and the value of a "promoter's" services in the development of an ethanol project will provide information beyond the common knowledge of the trier of fact, even in Iowa where ethanol production is common. *See id.* at 591 (explaining that expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact).

On the present record, I believe that excluding Mr. Ott's challenged opinions from this case, at least those opinions in his amended and supplemented report, would "invade

the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." *Vesey*, 338 F.3d at 916-17. This is a case in which vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are not only traditional, but appropriate means of attacking what the defendants contend are shaky opinions from Mr. Ott. *Daubert*, 509 U.S. at 595-96; *Vesey*, 338 F.3d at 917. Indeed, for many of the reasons that the defendants contend that Mr. Ott's testimony should be excluded, a reasonable juror could determine that his opinions are entitled to little weight.

The parts of the defendants' Motions In Limine seeking exclusion of Mr. Ott's opinions are denied, and Mr. Ott's opinions and testimony consistent with his amended and supplemented expert report are admissible.

### 2. *Evidence concerning the Dunafoldvar Ethanol Facility*

The second category of evidence that defendant Turley seeks to exclude is any testimony regarding *future lost profits* for the Dunafoldvar Ethanol Facility in Hungary, under Iowa's "new business rule." Defendant Turley argues that the "new business rule" bars such evidence, because future lost profits are unduly speculative and not determinable with reasonable certainty. The third category of evidence that the Fagen Defendants seek to exclude is also related to the Dunafoldvar Ethanol Facility, that is, any reference to the *profit or net income that Fagen, Inc., or any Fagen-related entity received or earned on the construction* of the Dunafoldvar Ethanol Facility. The Fagen Defendants argue that exclusion of this evidence is appropriate, because it is irrelevant and unduly prejudicial under Rules 402 and 403. Catipovic also seeks to exclude certain evidence related to the Dunafoldvar Ethanol Facility as his thirteenth category of challenged evidence. Catipovic seeks to exclude testimony by any expert or fact witness on behalf of the defendants regarding the financial performance of the Dunafoldvar Ethanol Facility, *to the extent that the information is based on financial information or*

*documents not disclosed in the course of discovery*. I will consider these challenges to evidence relating to the Dunafoldvar Ethanol Facility separately.

### a. *Turley's challenge*

Turley argues that evidence or opinions by Mr. Ott regarding the supposed profitability of the Dunafoldvar Ethanol Facility should be excluded under Iowa's "new business rule." Turley contends that I should also exclude any testimony by others related to the Dunafoldvar Ethanol Facility's future profits, or about how profitable the facility in Osijek, Croatia, would have been, if it had been built. Turley argues that, in this case, neither Catipovic nor his expert can offer any testimony regarding the profits from a predecessor or analogous business, because no such business exists. He argues that the Dunafoldvar Ethanol Facility is the first of its kind in Eastern Europe. Turley also argues that the Osijek facility was never built, and, in any event, was intended to be fundamentally different from the Dunafoldvar Ethanol Facility. Furthermore, Turley argues, Catipovic is seeking lost profits for an ethanol facility where he has no experience operating such a business.

Catipovic counters that the "new business rule" is not applicable here, because Turley does not and cannot argue that anyone anticipated that the Dunafoldvar Ethanol Facility would not be profitable. Indeed, Catipovic points out that the belatedly produced financial information demonstrates that the Dunafoldvar Ethanol Facility is very profitable, exceeding the conservative profits projected by his expert. Catipovic also argues that the ethanol industry is not new, but has an established track record, albeit in a different geographical market. In short, Catipovic argues that this case involves neither a "new" business nor circumstances in which the "new business rule" should apply.

In reply, Turley reiterates that neither Catipovic nor his expert can offer any testimony regarding profits from a predecessor business, because no such business exists. While Turley concedes that the ethanol industry is not new to the United States, he argues

that the Dunafoldvar Ethanol Facility is not in the United States, and that its future profitability is controlled by different commodity, supply, and distribution markets, different labor laws, different government subsidies, taxes, fees, and laws, and different financing and banking covenants.

The "new business rule" is an uncomfortable fit here, as to evidence related to the Dunafoldvar Ethanol Facility. The rule is generally asserted to bar recovery of lost profits *by a failed new business*, alleging that the failure was the result of the tortious conduct of another. *See, e.g., McNeal v. SDG Macerich Properties, L.P.*, No. C 07-4015-MWB, 2008 WL 2691047, *14-*16 (N.D. Iowa July 1, 2008) (explaining the "new business rule" under Iowa law, citing cases); *accord Independent Business Forms, Inc. v. A-M Graphics, Inc.*, 127 F.3d 698, 704 (8th Cir. 1997) (explaining that "[T]he general rule" under Iowa law is that "a new business cannot recover lost profits"). No one is arguing in this case that the Dunafoldvar Ethanol Facility in Hungary has failed, nor is any party seeking to recover lost profits because the alleged tortious conduct of the defendants caused the failure of the Dunafoldvar Ethanol Facility. Rather, Catipovic is basing *his* damages, for alleged breach of contract by Turley and for alleged unjust enrichment of the defendants, at least to some extent, on the profits that he *would have reaped* if the defendants had not kicked him out of the project, usurped his ideas and the value of his services, and built a different ethanol plant in Dunafoldvar, Hungary, without him, instead of building the plant in Osijek, Croatia, with him.

Moreover, even if the "new business rule" were a proper fit for the circumstances presented here relating to the Dunafoldvar Ethanol Facility, the Iowa rule that lost profits of a new business are generally too speculative to be recoverable "is not absolute." *See McNeal*, 2008 WL 2691047 at *15 (internal quotation marks and citations omitted). Rather, "[i]f factual data furnishing a basis for probable loss of profits is presented, evidence of future profits may be admitted and its weight should be left to the fact-finder

[and] the question is whether a prospective loss of net profits has been shown with reasonable certainty." *Id.* (internal quotation marks and citations omitted). Here, factual data concerning the actual performance of the Dunafoldvar Ethanol Facility over the last few years provides a basis, with reasonable certainty, for determining probable profits in the future. Thus, assuming that Catipovic can prove that he was entitled to some share of the profits of the Dunafoldvar Ethanol Facility, evidence demonstrating that he lost some share of the future profits of that facility is admissible, and its weight should be left to the fact-finder. *Id.*

The "new business rule" is a much better fit as to evidence relating to the future profitability of the Osijek, Croatia, ethanol plant that the parties purportedly agreed to build with Catipovic, but the defendants then failed to pursue. Catipovic does not respond to Turley's attempts to exclude evidence about how profitable the facility in Osijek, Croatia, would have been, if it had been built. To the extent that Catipovic bases any claim for damages on lost profits of that failed project, profits from that "new business" are, indeed, too speculative to be recoverable. *See id.* *14. There is simply no available data of past ethanol business in Croatia from which anticipated profits could be established. *Id.* at *15. Catipovic has not shown or even attempted to show that the Dunafoldvar Ethanol Facility is sufficiently similar to the planned one in Osijek, Croatia, that it would be the least bit predictive of future profits from an ethanol facility in Osijek. Thus, the "new business rule" is applicable to bar evidence of future profits of the Osijek, Croatia, ethanol project. *Cf. id.*

The second part of Turley's Motion In Limine, is denied to the extent that it seeks exclusion of testimony regarding future lost profits for the Dunafoldvar Ethanol Facility, but granted to the extent that it seeks exclusion of testimony regarding future lost profits of the Osijek, Croatia, ethanol project.

### b.    *The Fagen Defendants' challenge*

The Fagen Defendants note that Catipovic has made clear that his claim against them is for allegedly receiving the value of his development or "promoter" activities without compensating him and for allegedly "usurping" his promoter interest in any ethanol project with Turley when Fagen invested in the Dunafoldvar Ethanol Facility. The Fagen Defendants argue that the separate profits or earnings that any of the Fagen entities received for *constructing* the Dunafoldvar Ethanol Facility are irrelevant to any of the elements of Catipovic's unjust enrichment claim against them, because such profits shed no light on the value of any information or services that Catipovic allegedly provided to the Fagen Defendants. The Fagen Defendants argue that, if somehow relevant, evidence of profits from the construction of the Dunafoldvar Ethanol Facility is unduly prejudicial, because it would mislead or confuse the jury, where the focus should be on the value of what Catipovic allegedly provided (and whether it would be unjust for the defendants to keep it without compensating Catipovic), not on the Fagen Defendants' separate profits from constructing the Dunafoldvar Ethanol Facility.

Catipovic argues that the Fagen Defendants received a benefit from his services, in that they were awarded the contract to build the Dunafoldvar Ethanol Facility at a "handsome" profit, and he contends that Fagen later acquired an equity ownership in that facility in exchange for Fagen's profit on the construction of the facility. Thus, Catipovic contends that evidence of the Fagen Defendants' enrichment by receipt of the construction contract and profits from it, and the resulting equity stake, is relevant to demonstrate the extent to which the Fagen Defendants were unjustly enriched.

In reply, the Fagen Defendants dispute that Fagen acquired an equity ownership in the Dunafoldvar Ethanol Facility in exchange for his profit on the construction of that facility, because they assert that he used his own money to acquire the equity share. They argue that Catipovic has never claimed that Fagen, Inc., received the construction

contract at Catipovic's expense, so evidence of the profits of Fagen, Inc., from that contract are irrelevant. They contend that the question is whether Fagen's equity interest in the Dunafoldvar Ethanol Facility was somehow enhanced by Catipovic's development efforts, which has nothing to do with the Fagen Defendants' profit *from construction* of the Dunafoldvar Ethanol Facility.

As the Iowa Supreme Court has explained, "The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another *or receive property or benefits without paying just compensation.*" *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001) (citing *Credit Bureau Enters., Inc. v. Pelo*, 608 N.W.2d 20, 25 (Iowa 2000)) (emphasis added). To put it a slightly different way, "The theory of unjust enrichment 'is premised on the idea that it is unfair to allow a person to benefit *from another's services when the other expected compensation.*'" *Waldner v. Carr*, 618 F.3d 838, 848 (8th Cir. 2010) (quoting *State Pub. Defender v. Iowa Dist. Court for Woodbury County*, 731 N.W.2d 680, 684 (Iowa 2007)) (emphasis added). To recover for unjust enrichment under Iowa law, the plaintiff must show the following: "(1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *State ex rel. Palmer*, 637 N.W.2d at 154-55; *see also Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting these elements from *State ex rel. Palmer*, 637 N.W.2d at 154-55). The benefit in question need not "be conferred directly by the plaintiff," because "[t]he critical inquiry is that the benefit received be at the expense of the plaintiff." *Id*. at 155. Nevertheless, the Iowa Court of Appeals has explained that "[d]amages under a claim of unjust enrichment are limited to the value of what was inequitably retained." *Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000). Consequently, Chief United States Magistrate Judge Jon S. Scoles

concluded, in this case, that "damages [for unjust enrichment] depend on the value of services provided, not the defendant's profitability." *Catipovic v. Turley*, 2013 WL 1718061, *6 (N.D. Iowa April 19, 2013) (unpubl. op.) (citing *Iowa Waste Sys., Inc.*, 617 N.W.2d at 30, and holding that records of accounts for Fagen, Inc., into which and out of which money flowed in connection with the construction of the Dunafoldvar Ethanol Facility, were irrelevant to any unjust enrichment claim against the Fagen Defendants).

Under no cognizable theory advanced by Catipovic is evidence of the profits that the Fagen Defendants realized from the *construction* of the Dunafoldvar Ethanol Facility evidence of "the value of what was inequitably retained" by the Fagen Defendants, *see Iowa Waste Sys., Inc.*, 617 N.W.2d at 30, or "the value of services provided" by Catipovic, *Catipovic*, 2013 WL 1718061 at *6, assuming that the Fagen Defendants benefitted from Catipovic's services, but did not compensate him for those services. *Waldner*, 618 F.3d at 848. Catipovic has not alleged that he provided services related to the actual *construction* of any ethanol facility; rather, he has alleged that he provided services in the promotion of an ethanol project or projects in Eastern Europe. Like the Fagen Defendants, I conclude that, in determining Catipovic's damages, if any, on his unjust enrichment claim against the Fagen Defendants, the question is the value of what Catipovic allegedly provided (and whether it would be unjust for the defendants to keep it without compensating Catipovic); the Fagen Defendants' separate profits from constructing the Dunafoldvar Ethanol Facility are simply irrelevant to that question. *See* FED. R. EVID. 401 (relevant evidence is evidence that has any tendency to make any fact of consequence more or less probable); FED. R. EVID. 402 (relevant evidence is generally admissible, but irrelevant evidence is not).

Moreover, even if somehow relevant, I agree with the Fagen Defendants that such evidence is, at the very least, likely to confuse or mislead the jurors, such that it is

inadmissible pursuant to Rule 403 of the Federal Rules of Evidence. *See* FED. R. EVID. 403 ("The court may exclude relevant evidence if its probabtive value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Introduction of the evidence of the profits that the Fagen Defendants realized from *constructing* the Dunafoldvar Ethanol Facility might mislead or confuse the jurors about the nature or the value of the services or benefits that Catipovic provided to the Fagen Defendants, which were not related to the *construction* of that facility.

The third part of the Fagen Defendants' Motion In Limine, seeking exclusion of evidence relating to the profits or earnings that any of the Fagen entities received for *constructing* the Dunafoldvar Ethanol Facility, is granted.

### c.     *Catipovic's challenge*

Catipovic's challenge to evidence of the profits or financial performance of the Dunafoldvar Ethanol Facility is based on the alleged failure of the defendants to make proper and timely disclosures. Catipovic argues, in his Reply in support of his Motion In Limine, that the defendants' belated disclosure of additional information about the Dunafoldvar Ethanol Facility, *after* the motions in limine deadline, demonstrates the defendants' "willfulness." I conclude, however, that those disclosures, and Mr. Ott's opportunity to provide an amended and supplemented report based upon those additional disclosures, renders this part of Catipovic's Motion In Limine moot. If the defendants do, indeed, rely at trial on evidence of the profits or financial performance of the Dunafoldvar Ethanol Facility that has *never* been produced to Catipovic, Catipovic may reassert his motion to exclude such evidence at that time.

Thus, the thirteenth part of Catipovic's Motion In Limine, seeking exclusion of testimony by any expert or fact witness on behalf of the defendants regarding the financial

18

performance of the Dunafoldvar Ethanol Facility, to the extent that the information is based on financial information or documents not disclosed in the course of discovery, is denied without prejudice to reassertion if such evidence is presented at trial.

### 3. *Unpleaded claims*

The fourth category of evidence that defendant Turley seeks to exclude is any reference to unpleaded claims involving alleged fraud or alleged conspiracy of defendant Turley with the Fagen Defendants. Similarly, the ninth category of evidence that the Fagen Defendants seek to exclude is unpleaded claims, including references to a conspiracy or any references to Roland Fagen or any Fagen entity breaching any agreement with Catipovic or Walt Wendland or otherwise circumventing Catipovic.

#### a. *Arguments of the parties*

Turley argues that the court has twice denied Catipovic's requests for leave to amend his Complaint to assert a fraud claim against him. Turley contends that Catipovic has also made allegations that Turley conspired with the Fagen Defendants to defraud Catipovic, but has not pleaded such a claim. Thus, Turley contends that any references to fraud or allegations of conspiracy should be excluded at trial pursuant to Rules 402 and 403, as irrelevant and unfairly prejudicial. Similarly, the Fagen Defendants argue that Catipovic's "unjust enrichment" claim should not be used to allow evidence of unpleaded claims of fraud and conspiracy, because references to such claims are irrelevant and prejudicially insinuate wrongful conduct not at issue. The Fagen Defendants add that references to any "breach" by them would be irrelevant and prejudicial, where there is no "breach of contract" claim against them.

Catipovic argues that evidence of unpleaded fraud and conspiracy is relevant to other issues in the case and, therefore, admissible. He contends that "collusion" of the defendants is directly relevant to whether and how the defendants used his services without compensating him, the "course of dealing" among the parties, and how and why

he provided his services to the defendants, which is, in turn, relevant to his "unjust enrichment" claim. He contends that, despite denial of his motions to amend, the defendants are on notice of his allegations of fraud and conspiracy. Catipovic also contends that he will seek, and will be entitled to, amendment of his Complaint to add fraud and conspiracy claims, during or after trial, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure. Catipovic argues that he must be allowed to present evidence of fraud and collusion to present a full and complete version of the facts related to the transactions at issue.

In his reply, Turley argues that he does not intend to bar evidence related to claims properly before the jury, but does seek to prohibit Catipovic from directly referencing unpleaded claims of fraud or conspiracy. Turley concedes that evidentiary objections regarding relevance of evidence are properly reserved for trial. Similarly, in reply, the Fagen Defendants argue that Catipovic should be barred from stating or implying that they were involved in fraud, a conspiracy, or a breach of agreements.

### b. Analysis

In general, I agree with the defendants that allowing evidence of unpleaded claims (or claims that the plaintiff has been denied leave to assert) is unduly prejudicial, because it could allow the jurors to decide the case on the basis of alleged misconduct not properly at issue. See FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); see, e.g., United States v. Muhlenbruch, 634 F.3d 987, 1001 (8th Cir. 2011) ("Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." (internal quotation marks and citations omitted)). Like the defendants, I also recognize that there may be instances in which evidence relevant to pleaded claims might also have supported

an unpleaded claim and, in that case, such evidence should generally be admissible. Nevertheless, in this case, I believe that it should be possible for Catipovic to demonstrate fully the actions and interactions of the parties, in support of his pleaded claims, without reference to unpleaded claims of "fraud," "conspiracy," "collusion," or, as to the Fagen Defendants, "breach" of any agreement, and that such references would be unduly prejudicial, because they would invite the jurors to decide the case on the basis of alleged misconduct not properly at issue. *Id.*

Thus, part four of defendant Turley's Motion In Limine and part nine of the Fagen Defendants' Motion In Limine are granted to the extent that Catipovic is not allowed to refer to "fraud," "conspiracy," "collusion," or, as to the Fagen Defendants, "breach" of any agreement, or similar characterizations. The relevance and admissibility of any particular *evidence* of the conduct and relationship of the parties must be determined at trial.

### 4. *Undisclosed damages*

The fifth category of evidence that defendant Turley seeks to exclude is any evidence or testimony related to any damages not disclosed by Catipovic in his Answers to Interrogatories or Initial Disclosures, on the ground that such evidence is barred by Rules 26 and 37(c) of the Federal Rules of Civil Procedure. Similarly, the second category of evidence that the Fagen Defendants seek to exclude is reference to finder's fees or other measures of damages not identified by Catipovic in discovery responses or Initial Disclosures.

### a. *Arguments of the parties*

Turley argues that Catipovic has failed to supplement his responses to Turley's discovery requests or his Initial Disclosures related to damages. Accordingly, Turley argues that Catipovic should be barred from introducing any evidence or testimony related to damages that he has not previously disclosed pursuant to Rules 26(a)(1) and

37(c)(1) of the Federal Rules of Civil Procedure. Similarly, the Fagen Defendants argue that Catipovic has never claimed a finder's fee as part of his damages or provided evidence to support the valuation of a finder's fee. The Fagen Defendants point out that Catiopvic has provided only Mr. Ott's conclusory opinion that the value of Catipovic's services was $2 million. The Fagen Defendants also argue that Catipovic should be barred, pursuant to Rules 26(a)(1) and 37(c)(1), from introducing any evidence or testimony related to calculations or theories of damages that he has not previously disclosed.

In response, Catipovic argues that he was hampered by the defendants' refusals to respond and undue delays in responding adequately to his own discovery requests concerning, *inter alia*, the performance and profits of the Dunafoldvar Ethanol Facility. He argues that the defendants cannot refuse to produce financial information until ordered to do so and then be heard to complain when his expert witness lacked the necessary detail until just a few days before his responses to the Motions In Limine were filed to use actual numbers in his damages calculations.

In reply, the Fagen Defendants point out that, even after amending and supplementing his expert report, Mr. Ott still has made no reference to finder's fees. Thus, they reiterate their contention that any reference to "finder's fees" or other damages not properly identified must be excluded.

### b. Analysis

When a party fails to provide information in compliance with Rule 26(a), the court "may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *see also* FED. R. CIV. P. 37(c)(1). In making its determination of whether or not failure to make timely disclosures is justified or harmless, the court should consider, among other things, "the reason for noncompliance, the surprise and

22

prejudice to the opposing party," the nature of the testimony, and the severity of the sanction. *Id.* "'[T]he exclusion of evidence is a harsh penalty and should be used sparingly.'" *Id.* (quoting *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995)).

Here, Catipovic has made at least a facially persuasive explanation for his alleged non-compliance with his duty to supplement sooner his damages disclosures, as well as a facially persuasive argument that the defendants will not be surprised or prejudiced by such evidence. Specifically, he contends, and the record reasonably supports, that the defendants were dragging their feet in responding to his pertinent discovery requests. *See id.* Furthermore, much as I explained, above, with regard to challenges to Mr. Ott's opinions, I need not lay blame for the belated appearance of "new" damages opinions in Mr. Ott's amended and supplemented report nor consider whether the amended and supplemented report is "untimely," based on the timeliness or untimeliness of relevant disclosures by the defendants. The trial has now been continued for several months, and the parties will have an adequate opportunity to redepose Mr. Ott or otherwise to assess his "new" damages opinions sufficiently in advance of trial. Also, if Catipovic has not already done so, Catipovic must now *promptly* supplement his disclosures concerning calculations and theories of damages, so that the parties have time to explore those calculations and theories prior to trial.

Thus, part five of defendant Turley's Motion In Limine and part two of the Fagen Defendants' Motion In Limine are denied, without prejudice to reassertion if Catipovic makes no additional disclosures concerning calculations and theories of damages not already disclosed or offers at trial calculations or theories of damages not properly disclosed.

## 5.    *Relative wealth*

The sixth category of evidence that defendant Turley seeks to exclude is any evidence or testimony regarding the relative wealth of the parties or defendant Turley's personal wealth, pursuant to Rules 401, 402, and 403, on the ground that such evidence is irrelevant and unduly prejudicial.  Similarly, the fourth category of evidence that the Fagen Defendants seek to exclude is Roland Fagen's personal financial statements under Rules 402 and 403, and the fifth category of evidence that they seek to exclude is the relative wealth of the parties or the financial status of Roland Fagen or Fagen, Inc., also pursuant to Rules 402 and 403.  In a similar vein, the twelfth category of evidence that plaintiff Catipovic seeks to exclude is evidence of his financial condition, including information and documents relating to his financial statements and income tax returns.

### a.    *Arguments of the parties*

Turley argues that injecting a defendant's wealth into the consideration of liability and the award of compensatory damages violates fundamental fairness, as well as common law safeguards, and invites a windfall to the plaintiff.  Furthermore, Turley argues that Catipovic has, in the past, made inaccurate and derogatory references to Turley's (and Roland Fagen's) personal wealth.  Turley argues that such evidence and derogatory references will distract the jurors from matters properly at issue.  Similarly, the Fagen Defendants argue that Roland Fagen's personal finances are not relevant to the value of Catipovic's alleged contributions to the ethanol project or any other issue in the case.  They argue, further, that any probative value that such evidence may have is outweighed by unfair prejudice, because of the number of other unnamed and unrelated ethanol enterprises in which Roland Fagen has an interest.

In response to these parts of the defendants' Motions In Limine, Catipovic argues that Turley's financial condition is relevant to explain the relationship of the parties and the terms of their agreement.  Somewhat more specifically, Catipovic argues that any

testimony and evidence submitted regarding Turley's role as an investor will necessarily involve testimony and evidence regarding his financial condition. Catipovic also argues that Turley's and Roland Fagen's financial condition is relevant to show the degree of influence and control that they possessed in negotiating with Catipovic, Wendland, and each other. He also contends that Roland Fagen's financial statements may be admissible to show the value of Roland Fagen's stake in the Dunafoldvar Ethanol Facility and that it may be used to cross-examine Roland Fagen, if Fagen downplays the profitability of the Dunafoldvar Ethanol Facility. Catipovic also argues that Turley's financial condition will be relevant, if Catipovic is allowed to amend his Complaint in the course of trial to assert fraud claims on which punitive damages are available. Catipovic contends that any potential prejudice can be addressed by a limiting instruction. In support of the pertinent part of his own Motion In Limine seeking to exclude evidence of his own financial condition, however, Catipovic contends, baldly, that such evidence has no relevance here and would be potentially confusing and prejudicial.

In reply in further support of the pertinent part of his Motion In Limine, Turley argues that, even if somehow relevant to show bargaining power, evidence of his financial condition is more prejudicial than probative. Turley also points out that no claim supporting punitive damages, to which his financial condition might be relevant, is currently before the court. The Fagen Defendants essentially echo these arguments in their Reply. In response to the part of Catipovic's Motion In Limine concerning his own financial condition, the Fagen Defendants agree to exclusion of such evidence, but only if evidence of Roland Fagen's financial condition is also excluded, and Turley simply joins in the Fagen Defendants' response.

### b. *Analysis*

Although a defendant's financial condition or wealth is relevant to punitive damages on claims under Iowa law, *see, e.g., McClure v. Walgreen Co.*, 613 N.W.2d

225, 233 (Iowa 2000), there are no claims under Iowa law currently in this lawsuit on which punitive damages are available. Catipovic's assertion that he might succeed in getting claims on which punitive damages are available into this lawsuit by amendment during trial is too farfetched a basis for allowing evidence of the defendants' financial condition or wealth, where his prior attempts to amend his Complaint to assert such claims have been denied.

Similarly, although the parties' relative bargaining power may be relevant to determination of whether or not a contract's terms are unconscionable under Iowa law, *see, e.g., C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80-81 (Iowa 2011), Catipovic has not asserted that the purported agreement among the parties for development of ethanol plants in Eastern Europe was, in some respect, unconscionable. I am not persuaded that a party's financial condition, wealth, or bargaining power is somehow relevant more generally to determining the terms of a contract. Rather, such evidence might invite jurors to decide the claims in this case on the improper basis of the parties' relative wealth, rather than on the basis of proof of the specific claims. Thus, such evidence appears to me to be more prejudicial than probative and excludable under Rule 403. *See, e.g., Muhlenbruch*, 634 F.3d at 1001 ("Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." (internal quotation marks and citations omitted)). Certainly, characterizations of any party as a "billionaire," "Wall Street type," "flush with cash," or "the King of Corn" are of little or no probative value whatsoever, and are laden with potential for prejudice or misleading the jurors, such that they will not be admissible. *Id.* Moreover, such characterizations are opinions masquerading as "reputation" evidence and do not even reach the dignity of evidence of character or character for truthfulness or untruthfulness, which would be of doubtful admissibility, even if it were offered. *See* FED. R. EVID. 404(a); FED. R. EVID. 608.

Furthermore, Catipovic's arguments notwithstanding, evidence of the parties' wealth, relative wealth, or financial condition is not necessary to demonstrate the roles and relationships of the parties in the purported scheme to develop ethanol plants in Eastern Europe. Specific evidence about the parties' roles—what they did to invest in or promote the project or specifics about the amount of their investments in the project in question—is what is probative and not unduly prejudicial. *See* FED. R. EVID. 402, 403.

Thus, the parts of the parties' Motions In Limine seeking to exclude evidence of their wealth, relative wealth, or financial condition are granted. Only if circumstances that are not yet foreseen present themselves to "open the door" to such evidence at trial will such evidence be potentially admissible.

### 6. *Settlement negotiations*

The seventh category of evidence that defendant Turley seeks to exclude is any evidence or testimony related to pre-trial settlement discussions or offers to compromise, on the ground that such evidence is precluded by Rule 408. Similarly, the sixth category of evidence that the Fagen Defendants seek to exclude is settlement discussions between the parties, also pursuant to Rule 408. Joining the consensus, the second category of evidence that plaintiff Catipovic seeks to exclude is any attempts or efforts by him to settle or any settlement discussions or negotiations he entered into, or any conduct by him during such negotiations. The only caveats to the apparent agreement of the parties that no such evidence should be admitted is Catipovic's resistance to exclusion of the next category of evidence, Turley's October 2012 letter to Wendland, and Catipovic's resistance to exclusion of evidence that Roland Fagen allegedly offered to pay money to Wendland, to the extent that such evidence might fall within the category of "settlement" evidence. Leaving those caveats for separate discussion, I agree with the parties that Rule 408 of the Federal Rules of Evidence generally bars such evidence and that no exception has been asserted here. Indeed, I question the need for any motion to exclude

such evidence, unless there are indications that a party does intend to rely on an exception to exclusion in Rule 408(b) and the applicability of the exception is disputed.

These parts of the parties' Motions In Limine are granted.

### 7. *Turley's October 2012 letter to Wendland*

The eighth category of evidence that defendant Turley seeks to exclude is any evidence regarding correspondence between Walt Wendland and Mark Turley, consisting of a letter attached to an e-mail dated October 24, 2012, which Turley argues is improper character evidence under Rules 404 and 608, and irrelevant and unduly prejudicial under Rules 401, 402, and 403. Similarly, the seventh category of evidence that the Fagen Defendants seek to exclude is the same letter from Mark Turley to Walt Wendland attached to an e-mail dated October 24, 2012, also under Rules 402 and 403.

#### a. *Arguments of the parties*

Turley contends that Catipovic has characterized the October 24, 2012, letter from Turley to Wendland as a "threat" to Wendland if he supported Catipovic's claims. Turley contends that evidence of this letter is not relevant to any material issue and is unfairly prejudicial, confusing, misleading, or time-wasting, although he does not explain how. Turley also contends that such evidence is improper character evidence that should be excluded pursuant to Rules 404 and 608, because that evidence should not be used to attack Turley's character for truthfulness. The Fagen Defendants also argue that the letter should be excluded, because it is unduly prejudicial and improper as character evidence, especially as to them, because Roland Fagen did not author or authorize the letter.

In response, Catipovic does characterize the letter as a "threat" to Wendland and as an "ultimatum" to Wendland to choose sides. Catipovic argues that the letter is admissible evidence that Turley attempted to influence or suppress a witness, that is, Wendland, or as evidence of Turley's consciousness of the weakness of his case.

Catipovic argues that it is unfair for a defendant to act in this fashion, then attempt to exclude evidence of such "antics" from jurors, who must make credibility determinations. He also contends that the effect of the defendants' "threats" is apparent from their reliance, at summary judgment, on Wendland's deposition testimony that Catipovic made only a limited contribution to the ethanol project. Catipovic contends that it would be extremely prejudicial and fundamentally unfair to him to allow the defendants to rely on Wendland's favorable testimony without the jury knowing that the defendants threatened Wendland with scorched earth litigation if he did not cooperate to put an end to Catipovic's litigation. Catipovic also points out that the letter was not produced by the defendants, even though it was clearly responsive to discovery requests, but only came into his possession from Wendland.

In reply, Turley points out that, in the case on which Catipovic relies, the Eighth Circuit Court of Appeals actually affirmed the district court's exclusion of evidence of alleged witness tampering. Turley and the Fagen Defendants both argue that, at the time of the letter, Wendland had not been identified as a witness, and, while Turley admits that the letter is "perhaps poorly worded," it did not rise to the level of a "threat" constituting witness tampering. Turley also contends that the only reason that Catipovic has for offering the letter is to attempt to poison the jury's perception of Turley. The Fagen Defendants reiterate that the potential for prejudice to them from admission of the letter is particularly high, because they were not involved in its writing and did not authorize it.

### b.     *Analysis*

First, I must put in context the parties' arguments about whether or not Turley engaged in "witness tampering," before deciding whether such evidence should be admissible. On October 24, 2012, well after this lawsuit was filed on December 29, 2011, and long after Wendland's knowledge of and involvement—indeed, a central

player—in pertinent incidents should have been apparent to the parties, even if Wendland had not been specifically identified as a "witness," Turley sent Wendland an e-mail with a letter attached. The e-mail asked Wendland to "see [the] enclosed note from [Turley]" and added, "I will be with Ron in the morning and I will give you a call to see which way you want to go." Turley's Motion In Limine, Exhibit F, WW007526.

The attached letter, in its entirety, ran as follows:

> Dear Walt,
>
> It was good to catch up with you yesterday and remember the better side of our efforts in Croatia. In fact, we both have enjoyed, over the years, your company and insights, and it is disappointing that Branimir has strained our relationship over the years.
>
> As a result of Branimir's lawsuit and discovery requests, we have had to spend a not-insignificant sum over the past six months on lawyers and have had to devote lots of time to what we all know is a frivolous lawsuit. We have not yet hit back against Branimir, but our patience is running out.
>
> Your name is all over the lawsuit, as Branimir's partner. The best way for us to go on the offensive is to sue Branimir for fraudulent inducement; at the time the "contract" he claims came into force, Branimir knew that a lot of the things he was saying were not true. There was no contract with Fagen; there wasn't even any agreement with Fagen. The land had not been secured, etc. etc. When we make that claim against Branimir, we will have to make that claim against you also, and you will thus also be a party to the lawsuit, with all the costs and frustrations that result.
>
> We will then launch exactly the same kind of discovery requests and interrogatories against you and Branimir that Branimir has launched against us. As we are answering Branimir's questions, you and Branimir will have no ability to resist the scope of questions we will ask. Over the course of two months, you will have to work with your lawyers to

assemble all the responses, and in those responses will be more than enough evidence to destroy Branimir in court. Perhaps there will be enough evidence to allow us to prevail on our fraudulent inducement claim and collect damages, not just from Branimir, but from you also. And if you or Branimir try to hold back incriminating documentation, it is not unlikely that we will get that documentation from Croatia, ICM, CHS, etc., and then you may face court sanctions as well.

It is not in our interests to cause you any frustrations, Walt, but we need to protect ourselves, and, naturally, recoup the expenses that Branimir has generated. If that means exposing you to the same kind of pain that Branimir is causing for us, then we will not hesitate. Ron fully endorses the contents of this letter.

Walt, you always could and can end this charade. We will not hide that we are disappointed that you did [not (?)] come forward to end this right away. So, our question to you now is whether you will assist us to end this farce or whether we will need to drag you forcefully into this lawsuit?

Best regards,

Mark

Turley's Motion In Limine, Exhibit F, WW007527.

The parties have not provided me with any evidence of any specific response from Wendland to this letter. What the record does show is that neither Turley nor the Fagen Defendants ever brought a counterclaim against Catipovic, and no party has asserted any claim against Wendland in this lawsuit. Roland Fagen denies that he was aware of or "endorsed" Turley's letter to Wendland at the time that it was sent to Wendland.

As all of the parties recognize, one of the few—perhaps only—decisions of the Eighth Circuit Court of Appeals to address purported witness tampering or interference with a witness by a party to a civil lawsuit is *Great American Insurance Company v.*

*Horab*, 309 F.2d 262, 264 (8th Cir. 1962). *See also Shannon v. Koehler*, No. C 08–4059–MWB, 2011 WL 10483366, *6 (N.D. Iowa Oct. 19, 2011) (unpubl. op.) (noting that *Great American Insurance* was the only Eighth Circuit Court of Appeals case cited by the parties in support of the proposition that a party's alleged witness tampering is admissible to show that party's "consciousness that his case is weak or unfounded"). In *Great American Insurance*, the Eighth Circuit Court of Appeals observed,

> It is generally held that, in a civil case, evidence that a litigant, or his agent, has attempted to influence or suppress a witness is receivable as an admission or as an indication of the litigant's consciousness that his case is weak or unfounded or that his claim is false or fraudulent. Specifically, an attempt to persuade a witness not to testify is admissible against the party responsible for that attempt.

*Great American Ins.*, 309 F.2d at 264 (internal citations omitted).

Turley is correct that, having stated this principle, the court in *Great American Insurance*, nevertheless, upheld exclusion of the evidence. *See id.* at 265. In that case, a party's son initially interfered with service of a subpoena on a witness by telling the witness that he did not have to accept service of the subpoena and encouraging him to refuse to come out of the house so that the sheriff could serve the subpoena. *Id.* at 264. The court explained why exclusion of this evidence fell within the district court's discretion, as follows:

> We do not condone any attempt to interfere with an officer's service of a subpoena. If Lary Horab's [the son's] actions constituted an attempt on his part to hamper Sheriff Lutz' service upon Ydstie [the witness], those actions were uncalled for and improper. It is probable that his actions were due to ignorance and were performed in the heat of a pending lawsuit in which his father's honesty was being challenged; this, however, is no justification for impeding the judicial process.

But Lary Horab did back away, the service upon Ydstie was effected, and the witness did appear in response to the subpoena. We conclude that the exclusion of the evidence in question in this civil case did not constitute or equate with a denial of substantial justice, that its admission or exclusion fell within the area of judicial discretion, and that there was no abuse of that discretion here.

*Great American Ins.*, 309 F.2d at 265.

I conclude that the incident involving Turley's October 2012 letter to Wendland here is distinguishable in almost every material respect from the alleged "witness interference" in *Great American Insurance*. The court in *Great American Insurance* concluded that the party's son had attempted to hamper a sheriff's service of a subpoena on a witness "due to ignorance and . . . in the heat of a pending lawsuit in which his father's honesty was being challenged," which the court did not condone, but seemed to find ultimately had no effect on the judicial process, because the son "did back away, the service upon [the witness] was effected, and the witness did appear in response to the subpoena." *Id.* Here, however, while Turley's "frustration" might have been high when he wrote the letter to Wendland, after six months of attorney's fees, other expenses, and inconvenience from what he considered a "frivolous" lawsuit by Catipovic, Turley did not act "in the heat" of the moment, but with sufficient reflection to draft the letter separately from the covering e-mail, then send it to Wendland. In light of the contents of the letter, Turley certainly cannot claim "ignorance" of the ins and outs of litigation. The letter also plainly stated intended consequences to Wendland if he did not accede to Turley's desires. The fact that those consequences never materialized does not create the sort of "no harm, no foul" situation at issue in *Great American Insurance*, where Catipovic has pointed to circumstances that, at the very least, suggest that Wendland's testimony has been favorable to the defendants, perhaps as the result of the statements in the letter or similar statements from Turley, and Wendland has never been brought into

this litigation on a claim by the defendants against him. I simply cannot conclude, as the court did in *Great American Insurance*, that it is clear that there has been no "denial of substantial justice" as a result of Turley's letter. *Id.*

The circumstances here are also materially different from those that led me to exclude evidence of alleged "witness tampering" in *Shannon v. Koehler*, No. C 08–4059–MWB, 2011 WL 10483366, *6 (N.D. Iowa Oct. 19, 2011) (unpubl. op.), in which I considered the guidance provided by *Great American Insurance*. In *Shannon*, the defendant alleged that the plaintiff had "tampered" with a witness by offering him money to provide favorable testimony. 2011 WL 10483366 at *4-*5. I noted, first, that the defendant's reliance on *Great American Insurance* was misplaced, to the extent that the court in that case had actually affirmed the district court's decision to exclude the evidence of alleged witness tampering. *Shannon*, 2011 WL 10483366 at *6. I then found that the probative value of the witness's testimony about the alleged tampering incident was substantially outweighed by the danger of unfair prejudice to the plaintiff, because the incident was much more ambiguous than the defendant contended. *Id.* Specifically, I noted that the witness himself had not taken the plaintiff seriously, because the plaintiff was drunk at the times he offered the witness money, and the incidents occurred five years before the witness was identified as a potential witness, so that "to call [the plaintiff's] overtures 'witness tampering' stretche[d] the bonds of credulity, as [the witness] was not even identified as a witness when these conversations occurred." *Id.* at 7. I found that these circumstances also demonstrated that the probative value of the witness's testimony about alleged tampering was "very low." *Id.* Furthermore, I concluded that the low probative value was outweighed by the potential for unfair prejudice, because the evidence was potentially so inflammatory as to divert the jurors' attention from the material issues in the trial, where that evidence could create the appearance that the plaintiff had used improper and deceitful means in securing evidence

for trial, when, in fact, the witness did not even take the plaintiff's alleged offers seriously. *Id.* at *8.

Here, in contrast, I have no reason to excuse Turley's letter as merely inebriated insinuations that nobody took seriously. *Compare id.* at *6-*8. Rather, as I noted above, Turley acted with sufficient reflection to draft the letter separately from the covering e-mail, then send it to Wendland, and the letter is couched in unambiguous terms promising consequences if Wendland did not act in a manner that suited Turley. Contrary to Turley's assertions, a reasonable juror *could* find that this letter rose to the level of "witness tampering," and could even find that it *did* have an impact on Wendland's conduct in this case. *Compare id.* at *8. Under these circumstances, it would not be "unfairly prejudicial" to allow this evidence. Rather, the circumstances here fit the general rule stated in *Great American Insurance* that, "in a civil case, evidence that a litigant, or his agent, has attempted to influence or suppress a witness is receivable as an admission or as an indication of the litigant's consciousness that his case is weak or unfounded or that his claim is false or fraudulent." *Great American Ins.*, 309 F.2d at 264 (internal citations omitted). Here, "an attempt to persuade a witness [Wendland] not to testify"—or to testify favorably to the defendants—"is admissible against the party responsible for that attempt." *Great American Ins.*, 309 F.2d at 264 (internal citations omitted).

I must address two more issues. First, Turley argues that, notwithstanding the general rule stated in *Great American Insurance*, the letter is inadmissible pursuant to Rule 608, because it is an attempt to prove a specific instance of conduct to attack his credibility. I note that the basis for admission of evidence of witness tampering by a litigant in *Great American Insurance* was *not* that it was evidence of the litigant's character for truthfulness or untruthfulness, but that it was "an admission or . . . an indication of the litigant's consciousness that his case is weak or unfounded or that his

claim is false or fraudulent," 309 F.2d at 264; in other words, it was admissible as Rule 404(b) evidence. As the Fourth Circuit Court of Appeals explained,

> Extrinsic evidence of past bad acts inadmissible under Rule 608(b) may nonetheless be admissible under Rule 404(b) if offered for a purpose other than to prove bad character or propensity to commit a crime, despite the fact that the evidence comes in after a defendant has denied the conduct under cross-examination. *United States v. Smith Grading and Paving, Inc.*, 760 F.2d 527, 530 (4th Cir.1985). Evidence of witness intimidation is admissible to prove consciousness of guilt under Fed.R.Evid. 404(b), where the evidence is related to the offense charged and is reliable. *United States v. Billups*, 692 F.2d 320, 330 (4th Cir.1982).

*United States v. Phillips*, 48 F.3d 1218 (4th Cir. 1995) (table op.). Turley is not simply a witness, but a litigant, so that Rule 404(b) permits admission of the letter, not just inquiry into the incident, for the purpose of showing his admission or as an indication of his consciousness of the weakness or lack of merit of his position. The letter would also be admissible to challenge Wendland's credibility or bias as a witness, pursuant to Rule 607.

Second, I note that the Fagen Defendants seek to exclude this letter, because it unfairly taints them, when they neither authored nor authorized the letter. I note that the letter "is admissible against the party responsible for th[e] attempt [to tamper with the witness]." *Great American Ins.*, 309 F.2d at 264 (internal citations omitted). The jurors here must be instructed that the letter is not admissible against a party not responsible for using the letter in an attempt to tamper with Wendland—just as the jurors must be instructed to decide whether the letter *is* an attempt to tamper with Wendland and what effect, if any, that attempt had. There is a factual dispute here, not only between Catipovic and the Fagen Defendants, but between Turley and the Fagen Defendants (as indicated by the text of the letter asserting that Roland Fagen "endorsed" the letter and

Roland Fagen's denials that he had done so), as to whether Roland Fagen was aware of, authorized, and then benefitted from the letter.

Therefore, part eight of Turley's Motion In Limine and part seven of the Fagen Defendants' Motion In Limine are denied, and the October 24, 2012, letter from Turley to Wendland is admissible, subject to the limiting instructions described above.

### B.    Defendant Turley's Remaining Evidentiary Challenge

### 1.    Mr. Murphy's travel restrictions

Resolution of the overlapping evidentiary issues leaves only one part of Turley's Motion In Limine unresolved.  That unresolved issue is in the third part of Turley's Motion, in which he seeks exclusion of Fergus Murphy's travel restrictions.  As background to this part of his motion, Turley explains that witness Fergus Murphy is an engineer who formerly worked as a consultant for Turley and is now the Chief Technology Officer for Ethanol Europe Renewables, Ltd.  Mr. Murphy lives in Budapest, Hungary, and has had difficulties in obtaining a visa to travel to the United States on two previous occasions.  Turley contends that the reason why Mr. Murphy's travel visas have been denied is unclear, despite Mr. Murphy's efforts to determine the reason.  Catipovic contends, however, that, according to the United States Department of State Bureau of Consular Affairs web site, a travel visa may be denied, *inter alia*, if the applicant was convicted of a crime, misrepresented a material fact, committed a fraud to obtain the visa, or remained in the U.S. longer than authorized.  Catipovic also disputes that Mr. Murphy does not know the reason for denial of his visas, because, again according to the U.S. State Department, "[i]f denied a visa, the applicant is given a reason based on the section of law which applies."  Catipovic's Resistance (docket no. 146), Exhibit B.  Thus, Catipovic argues, if Mr. Murphy was not provided a reason for the denial of

his visa, as Turley contends, that would certainly constitute a departure from U.S. State Department policy.

### 2. Arguments of the parties

Turley argues that Mr. Murphy's inability to travel to the United States is not relevant under Federal Rule of Evidence 402. He contends that, to the extent there is any limited relevance, its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time under Rule 403. Turley also argues that, because Mr. Murphy does not know why his visas were denied, any testimony regarding Mr. Murphy's travel restrictions would be wholly speculative and would serve no purpose but to suggest that Mr. Murphy is a "bad person," in the absence of any evidence that is actually probative of his honesty.

Catipovic argues that, based on the grounds for denial of a visa, "the denial of Fergus Murphy's visa *may* be probative of his character for truthfulness." Catipovic's Resistance (docket no. 146) at 13 (emphasis added). He contends that Mr. Murphy's character for truthfulness is highly probative here, because of his substantial involvement in the matters at issue and his attacks on Catipovic's character for truthfulness, while Catipovic has no other means to attack Mr. Murphy's credibility. Catipovic also argues that, because the State Department indicates on its web site that an applicant is given a reason for denial of a visa, Turley's contention that Mr. Murphy does not know the reason for denial of his visas is "suspect and may, in and of itself, involve dishonesty." *Id.* Catipovic also argues that the relative prejudice of admitting this evidence is minimal, because Mr. Murphy is not a party to this action or an employee of Turley, so that there is little likelihood that jurors would impute Mr. Murphy's dishonesty to Turley.

In reply, Turley argues that Catipovic is assuming that the reason for denial of Mr. Murphy's visas is dishonesty or a criminal conviction, without any factual support

at all. Thus, Turley contends that Catipovic's entire assertion of the value of this evidence is based on mere speculation.

### 3. Analysis

I believe that Catipovic is attempting to put the burden on Turley to show that evidence of denial of Mr. Murphy's visa applications is inadmissible, but Catipovic, as the proponent of the evidence, actually has the burden to show that the evidence is admissible. *See, e.g., United States v. Causevic*, 636 F.3d 998, 1004 (8th Cir. 2011); *United States v. Shields*, 497 F.3d 789, 793 (8th Cir. 2007); *United States v. Turning Bear*, 357 F.3d 730, 738 (8th Cir. 2004). Contrary to Catipovic's contentions, evidence that Mr. Murphy was denied visas to enter the United States for unknown reasons has very little probative value, even if *some* of the reasons that the United States State Department *may* deny a visa application involve the applicant's dishonesty. Catipovic asks me to *assume* that this evidence is probative of Mr. Murphy's credibility, but I would have to speculate, pretrial, and the jurors would have to speculate during trial, not reasonably infer from facts, that this is so. Indeed, Catipovic appears to acknowledge the speculative nature of the inference of dishonesty that he wishes the jurors to draw, when he argues that "the denial of Fergus Murphy's visa *may* be probative of his character for truthfulness." Catipovic's Resistance (docket no. 146) at 13 (emphasis added). His speculation that Mr. Murphy's denial of knowledge of the reasons for denial of his visas may *also* demonstrate dishonesty is even further afield. Finally, Catipovic's purported *need* for the evidence to attack Mr. Murphy's credibility does not translate into *probative value* of the evidence for that purpose.

Furthermore, even if evidence that Mr. Murphy was denied visas to visit the United States was somehow probative of a material issue, I conclude that the potential for unfair prejudice from this evidence greatly outweighs its probative value. Indeed, Catipovic appears to bank on the jurors making an inference, from the denial of

Mr. Murphy's visas for unknown reasons to the conclusion that the reason for the denial of the visas is some kind of dishonest or criminal conduct by Mr. Murphy, that Mr. Murphy is a "bad person." Such a conclusion would be an improper basis for the jurors' determination of any issue or claim in this case. *See* FED. R. EVID. 403 and Advisory Committee Notes (prejudice included inviting a decision on an improper basis, which may be, but is not necessarily an emotional one); *see also Muhlenbruch*, 634 F.3d at 1001 (same).

The third part of Turley's Motion In Limine, seeking the exclusion of Fergus Murphy's travel restrictions, is granted.

### C. Catipovic's Remaining Evidentiary Challenges

In his February 28, 2014, Motion In Limine (docket no. 132), plaintiff Catipovic seeks exclusion of thirteen categories of evidence. The Fagen Defendants filed a Response (docket no. 137) to Catipovic's Motion on March 10, 2014, and defendant Turley also filed a Response (docket no. 138) the same day, but simply joined in the Fagen Defendants' Response.

#### 1. Categories of evidence already addressed or not disputed

I have already addressed Catipovic's challenges to three categories of evidence. Those categories are two ("Any attempts or efforts by plaintiff to settle or any settlement discussions or negotiations entered into by plaintiff, or any conduct of plaintiff during such negotiations"), twelve ("The financial condition of plaintiff, including information and documents relating to plaintiff's financial statements and income tax returns"), and thirteen ("Testimony by any expert or fact witness on behalf of the Defendants regarding the financial performance of the ethanol plant in Dunafoldvar, Hungary, to the extent that

the information is based on financial information/documents not disclosed in the course of discovery.").

The defendants agree to exclusion of several more categories of evidence that Catipovic seeks to exclude in this case. Those catgories of evidence are one ("That plaintiff has not called to testify at trial any witness equally available to defendant in this action."); five ("Opinions, statements, or testimony by any expert witness for the defendants other than those disclosed in discovery"), but the Fagen Defendants add the caveat that witnesses identified as both experts and fact witnesses may testify to factual matters not previously disclosed in their expert reports, and I sustain that caveat; six ("Any exhibit or witness not previously disclosed to the plaintiff through defendant's disclosures or discovery responses in this matter"); eight ("Any suggestion to the jury, by argument or otherwise, as to what would have been the testimony of any witness not actually called to testify"); ten ("That plaintiff has been involved in other lawsuits prior or subsequent to this lawsuit"); and eleven ("That plaintiff has been a party to other unrelated claims or settlements made either prior or subsequent to this lawsuit, or the amount sought or paid therein"). Catipovic's challenges to these categories of evidence are granted as unresisted.

These dispositions leave in dispute only four categories of evidence that Catipovic challenges. I will consider those four categories in turn.

## 2. *Expert testimony as to facts and inferences*

The third category of evidence that Catipovic seeks to exclude is any testimony or statements by an expert who has not been designated as a fact witness, or who has no personal knowledge of the events in question to provide factual testimony concerning the events relating to or giving rise to this lawsuit, that draws inferences regarding the facts or events relating to or giving rise to this lawsuit. The defendants dispute exclusion of this category of evidence.

### a. Arguments of the parties

Catipovic argues, without further explanation, that such evidence is not relevant, is not the proper subject of expert testimony, is unduly prejudicial, and is likely to mislead the jury and cause confusion of the issues, so that it should be excluded pursuant to Rules 401, 403, 702, and 703. The defendants counter that experts are allowed to provide their opinions based on the factual evidence they reviewed in reaching their opinions, which may include inferences regarding the facts or events related to this lawsuit. The defendants assert that, without a more specific description of the "inferences" that Catipovic seeks to exclude, a blanket exclusion of such testimony is inappropriate. Providing only slightly more clarity concerning the evidence at issue in his Reply, Catipovic argues that testimony from first-hand knowledge and experience is not expert testimony and that experts who have not also been designated as fact witnesses may only testify regarding the factual bases of their opinions, pursuant to Rule 703, but may not testify regarding matters on which they have no personal knowledge, pursuant to Rule 602.

### b. Analysis

It is true that "[e]xpert testimony that is speculative is not competent proof and contributes 'nothing to a legally sufficient evidentiary basis.'" *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000)). Nevertheless, "[u]nder Federal Rule of Evidence 703, 'an expert may rely on otherwise inadmissible hearsay in forming [her] opinion if the facts and data upon which [she] relies are of a type reasonably relied upon by experts in the field.'" *Structural Polymer Group, Ltd. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008) (quoting *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997)); *United States v. Carter*, 270 F.3d 731, 735 (8th Cir. 2001) ("Rule 703 of the Federal Rules of Evidence permits experts to rely upon inadmissible facts or data in

forming opinions or inferences, if of a type reasonably relied upon by experts in a particular field."). Also, "[a]n expert's opinions are not inadmissible simply because an underlying assumption may be contestable." *In re Zurn Pex Plumbing Prods. Liability Litig.*, 644 F.3d 604, 615 (8th Cir. 2011). Rather,

> As a rule, questions regarding the factual underpinnings of the expert's opinion affect the weight and credibility of her testimony, not its admissibility. [*South Central Petroleum, Inc. v. Long Bros. Oil Co.*, 974 F.2d 1015, 1019 (8th Cir. 1992)]. We have said that "[o]nce expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *Brennan v. Reinhart Inst'l Foods*, 211 F.3d 449, 451 (8th Cir.2000) (internal quotation omitted).

*Structural Polymer Group, Ltd.*, 543 F.3d at 997-98. Finally, "[i]f a factfinder doubts [an expert's] assumptions, then the factfinder will discount his ultimate conclusions or rely on his alternate calculations which account for different [factual assumptions]." *In re Zern Pex Plumbing Prods.*, 644 F.3d at 615.

I conclude that, in light of these authorities, Catipovic seeks much too sweeping an exclusion of expert testimony that includes factual assumptions or inferences, even to the extent that he seeks to exclude factual assumptions or inferences that are based on otherwise inadmissible evidence or are not based on the expert's first-hand observations. Furthermore, I agree with the defendants that, without a more specific description of the factual assumptions or inferences of experts that Catipovic seeks to exclude, I cannot make a pretrial ruling on the admissibility of any factual assumptions or inferences of experts.

This part of Catipovic's Motion In Limine is denied.

### 3. Expert or lay opinions on credibility of others

#### a. Arguments of the parties

The fourth category of evidence that Catipovic seeks to exclude is "[a]ny lay or expert testimony that purports to opine as to the credibility of any witness or party." Catipovic argues that determinations of witness credibility are within the jury's competence and are not the proper subject of witness testimony. The defendants contend that Rule 607 allows "any party" to "attack a witness's credibility." They also contend that, to the extent that a witness's character for truthfulness becomes an issue, Rules 608 and 609 govern the admissibility of testimony or opinions about a witness's character for truthfulness. The defendants also argue that Catipovic's pretrial request to exclude any and all testimony opining on a witness's or a party's credibility is premature, because that issue is more appropriately the subject of an objection to specific testimony at trial. In reply, Catipovic reiterates that witness credibility is a question for the jury and is not a proper subject of expert opinion testimony. He also argues that a lay witness's opinion about another witness's credibility is properly excluded if the testimony is no more than bare assertions or conclusory allegations, the lay witness did not know the witness well enough to have formed an opinion about the witness's credibility, or the evidence would be more prejudicial than probative.

#### b. Analysis

In the past, I have barred an expert from opining as to the credibility of witnesses during the expert's testimony, because "it is the jury's 'job . . . to decide issues of credibility and to determine the weight that should be accorded evidence.'" *Shannon*, 2011 WL 10483366 at *31 (quoting *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003)); *see also Engesser v. Dooley*, 457 F.3d 731, 736 (8th Cir. 2006) ("An expert may not opine on another witness's credibility."). I will do so again here, although an expert also designated as a fact witness from whom a party seeks to elicit an opinion about the

credibility of a witness or party will be subject only to the limitations on a lay opinion on that subject.

As to a lay witness's opinion about the credibility of another witness, the Eighth Circuit Court of Appeals has explained,

> Federal Rule of Evidence 608(a) provides that the "credibility of a witness may be attacked ... by evidence in the form of opinion" subject to the limitation that "the evidence may refer only to character for ... untruthfulness." Admissibility of opinion testimony by lay witnesses is further limited by Rule 701, which requires that the testimony be "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' [sic] testimony or the determination of a fact in issue."

> We have stated that opinion testimony about the truthfulness or untruthfulness of a witness may be excluded "'if it amounts to no more than a conclusory observation,'" *United States v. Cortez*, 935 F.2d 135, 139 (8th Cir.1991), *cert. denied*, 502 U.S. 1062, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992) (quoting *United States v. Dotson*, 799 F.2d 189, 193 (5th Cir.1986)), or if the opinions were not " 'more than bare assertions,' " *United States v. McMurray*, 20 F.3d 831, 834 (8th Cir.1994) (quoting *Dotson*, 799 F.2d at 193). An adequate foundation must be laid in order for opinion testimony concerning another witness's character for untruthfulness to be admissible. Such a foundation is laid by demonstrating that the opinion witness knows the relevant witness well enough to have formed an opinion. *See, e.g., McMurray*, 20 F.3d at 834; *Cortez*, 935 F.2d at 139–40; *cf. United States v. Oliver*, 492 F.2d 943, 946 (8th Cir.1974).

> Whether there has been an adequate showing that proffered opinion testimony regarding a witness's truthfulness amounts to "more than bare assertions" is generally a question committed to the trial court's discretion, *McMurray*, 20 F.3d at 834 . . . .

*United States v. Turning Bear*, 357 F.3d 730, 734 (8th Cir. 2004). Furthermore, even if lay opinion testimony about the credibility of another witness is admissible pursuant to Rules 608 and 701, it may still be excludable pursuant to Rule 403. *Id.* To exclude such testimony pursuant to Rule 403, however, the district court must identify "sufficient harm from unfair prejudice or any other proper Rule 403 consideration that would 'substantially outweigh' the probative value of" an otherwise admissible and probative opinion. *Id.*

Here, I cannot possibly assess pretrial whether any lay witness's opinion about the credibility of another witness satisfies the requirements for admissibility pursuant to Rules 608, 701, or 403. *See Turning* Bear, 357 F.3d at 734. I have no idea whether any such opinion amounts to no more than a conclusory observation or bare assertion or whether the witness knows the relevant witness well enough to have formed an opinion about the relevant witness's credibility. *Id.* Nor can I assess whether there is any sufficient harm from unfair prejudice or any other proper Rule 403 consideration that would substantially outweigh the probative value of an otherwise admissible and probative lay opinion about the credibility of another witness. In short, Catipovic's efforts to bar pretrial all lay opinions about the credibility of other witnesses or parties is premature.

Therefore, the fourth part of Catipovic's Motion In Limine is granted as to purported expert opinions about the credibility of any party or witness, except to the extent that it is made clear to the jury that the expert is offering the opinion as a lay fact witness. This part of Catipovic's Motion is denied as to any lay opinion as to the credibility of any party or witness, including any lay opinion on this subject offered by an expert witness, without prejudice to reassertion at the time any such opinion is offered at trial.

### 4. Statements or reports of persons not present to testify or be cross-examined

#### a. Arguments of the parties

The seventh category of evidence that Catipovic seeks to exclude is "[a]ny statements or reports made or drafted by any person not present to testify or not subject to cross-examination on the contents of such statement or report." Catipovic contends that such statements or reports constitute hearsay that would not fit within any of the hearsay exceptions, so that they should be excluded pursuant to Rules 802 and 803. He also argues that he would be prejudiced by not having an opportunity to cross-examine the author of the report on the report's contents. The defendants contend that this part of Catipovic's Motion In Limine is premature, in that it fails to identify any specific "statements or reports" to which it is intended to apply. The defendants point out that there are numerous exceptions to the hearsay rule set out in Rule 803 that do not require that the declarant be "unavailable" at trial, making a blanket exclusion inappropriate. In his reply, Catipovic belatedly explains that the defendants have identified the statement of Zsolt Kocza as a potential trial exhibit, but have not guaranteed Mr. Kocza's presence at trial. Catipovic contends that the defendants should not be permitted to offer the statement of Mr. Kocza, "or any other similar statement," if that person is not present to testify at trial, because any such statement or report would constitute hearsay that does not fit within any hearsay exception.

#### b. Analysis

Catipovic has not provided me with the statement of Mr. Kocza or "any other similar statement" so that I cannot make any pretrial determination of whether it is excepted or excluded from the hearsay rule or otherwise admissible or excludable. This part of Catipovic's Motion In Limine is not only premature, it is a complete waste of the court's and the parties' time and resources. It is denied.

### 5. Demands for items that have not been the subject of discovery

#### a. Arguments of the parties

The last disputed category of evidence that Catipovic seeks to exclude, his ninth, is "[a]ny demands or requests before the jury for items from plaintiff which have not been the subject of discovery in this case." Catipovic argues that such items include, among others, statements, pleadings, records, and other documents. The defendants contend that this portion of Catipovic's Motion In Limine is also premature, because it is not clear what "items" Catipovic believes that the defendants may demand or request from him. Furthermore, the defendants contend, trial testimony and evidence is not limited solely to information that was the "subject of discovery," especially where the parties chose not to depose some of the witnesses identified in discovery. Rather, the defendants contend that they are entitled to question Catipovic about any subject that is relevant to the case and not otherwise inadmissible. In reply, Catipovic contends that he has fully complied with his duties to disclose relevant information and documents; that the defendants have not filed any motions to compel discovery; and that, therefore, any demands in front of the jury for items not requested from him in discovery would be improper, irrelevant, and prejudicial.

#### b. Analysis

There is plenty of authority that a party can be barred from using at trial evidence that it did not produce in response to a pertinent discovery request. Specifically, under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a trial court can preclude a party that has failed to provide information or to supplement previously disclosed information in accordance with its discovery obligations from using undisclosed information at trial, unless the failure was substantially justified or harmless. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). Catipovic seeks an "inverse" limitation, that a party that has responded to discovery cannot be asked at trial about evidence that was not requested in

discovery. He cites, and I find, no authority for such a limitation in the discovery rules. Catipovic argues, however, that Rules 402 and 403 of the Federal Rules of Evidence are the basis for such a limitation. While such an inquiry *might* be for irrelevant evidence or the inquiry itself might be unduly prejudicial, it is also possible that the request would legitimately arise from unexpected trial testimony about the existence of an item that the defendants believe should have been produced in response to one of their discovery requests. Thus, I cannot tell until trial whether such an inquiry relates to relevant or irrelevant evidence or whether the inquiry itself is unduly prejudicial.

I conclude that this part of Catipovic's Motion In Limine is also premature, and, as such, it is denied without prejudice.

### D.     The Fagen Defendants' Remaining Evidentiary Challenges

Three of the Fagen Defendants' evidentiary challenges remain to be resolved. I will consider those challenges in turn.

### 1.     Roland Fagen's alleged offer of money to Wendland

In part eight of their Motion In Limine, the Fagen Defendants seek exclusion of an alleged offer made by Roland Fagen to pay money to Walt Wendland, on the ground that such evidence is inadmissible under Rules 402, 403, and 408. The Fagen Defendants point out that Catipovic asserted, in summary judgment proceedings, that Fagen offered money to Wendland in an effort to acknowledge the value of the promoters' efforts. They argue, however, that Wendland actually testified that Roland Fagen offered to pay him what he had invested in the Osijek, Croatia, project so that he could just walk away, when Wendland complained that the Fagen Defendants and Turley were starting a separate ethanol project "close to home" in Vukovar, Croatia. Furthermore, they argue that Wendland testified that he was insulted by this offer, because Wendland believed that

it was "not about the money," but "about getting a project done." Fagen Defendants' Brief (docket no. 133-1), 18-20 (quoting Wendland's deposition, 77:15-78:12, Plaintiff's Summary Judgment Appendix (docket no. 100), 69-70). They also point out that Roland Fagen testified in deposition that he offered Wendland "$150,000 to go away." Fagen Defendants' Brief at 20 (quoting Roland Fagen's deposition, 107:10-11, Plaintiff's Summary Judgment Appendix at 103).

### a. *Arguments of the parties*

The focus of the Fagen Defendants' argument to exclude this evidence is that the purported offer is evidence of an offer to compromise, which should be excluded pursuant to Rule 408. The Fagen Defendants argue that, assuming that the purported conversation actually happened, it was clearly an offer to compromise a claim that was in dispute, even if litigation had not been commenced, and even if it did not involve a claim against someone who was ultimately a party to the litigation. They note that Wendland and Catipovic were partners in the alleged venture. They also argue that the amount of an offer of settlement should be excluded, because many factors, besides the value of a claim or a belief in the weakness of one's position, including a desire for peace, go into the determination to offer to settle. As to exclusion of this evidence as irrelevant, under Rule 402, the Fagen Defendants add that the purported offer has no relevance to the value of any services that Catipovic provided to the Fagen Defendants or whether the Fagen Defendants inequitably retained the benefit of those services, and Catipovic is not seeking to recoup Wendland's expenses. As to exclusion of this evidence as unduly prejudicial, under Rule 403, the Fagen Defendants argue that Catipovic is attempting to spin this evidence as evidence of a guilty conscience or as evidence that Roland Fagen is a bad actor, but such evidence is merely a distraction from the real question of whether Catipovic provided anything of value to the Fagen Defendants for which they should compensate him. Finally, the Fagen Defendants argue that this evidence should be

excluded, because reports that the Fagen Defendants and Turley were going to build an ethanol plant in Vukovar, Croatia, were mistaken, and no such plant was ever built. Under these circumstances, the Fagen Defendants argue that this evidence is a complete distraction from any benefit that Catipovic may have provided to the project to build the Dunafoldvar Ethanol Facility, which was actually built in Hungary.

Catipovic contends that, whether the offer from Roland Fagen to Wendland was an offer to settle or an offer to compensate Wendland, it is relevant and admissible. He contends that Rule 408 is not applicable to offers to settle with third parties, and that Wendland is not and has never been a party to this lawsuit. He argues that evidence of a defendant's efforts to settle different, but similar claims, with non-parties is admissible, apparently to refute the Fagen Defendants' contentions that they are not liable on Catipovic's claims.

In reply, the Fagen Defendants argue that Catipovic's purpose for offering this evidence changes from moment to moment, from evidence of the purported value of the promoter's efforts, to evidence of settlement of a third party's claims suggesting a guilty conscience, to evidence supporting Catipovic's recovery for both his and Wendland's efforts. The Fagen Defendants argue that the offer to pay Wendland was either an offer to settle a claim related to this lawsuit, and should be excluded pursuant to Rule 408, or it was an offer to settle an unrelated claim, and should be excluded pursuant to Rules 402 and 403. The Fagen Defendants also point out that Catipovic did not respond to their arguments that the evidence is unduly prejudicial.

### b. Analysis

Rule 408 plainly bars evidence of offers to compromise or settle with a party "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction," *see* FED. R. EVID. 408(a), but it also expressly provides that "[t]he court may admit this evidence for another purpose, such

as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." FED. R. EVID. 408(b); *see also* Advisory Committee Note (2006) (stating that "[t]he intent [of amendments to the rule] is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim"); Advisory Committee Note (2011) (explaining that amendments were merely "stylistic," with no intent to change the effect of the rule).

The Advisory Committee explained the rationale for the rule, at the time that the rule was proposed, as follows:

> As with evidence of subsequent remedial measures, dealt with in Rule 407, exclusion may be based on two grounds. (1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position. The validity of this position will vary as the amount of the offer varies in relation to the size of the claim and may also be influenced by other circumstances. (2) A more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes. McCormick §§ 76, 251. While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person.

FED. R. EVID. 408, Advisory Committee Comments (1972 proposed rule).

The Eighth Circuit Court of Appeals has explained the applicability of Rule 408 principles to evidence of attempts to compromise or settle a claim with a third party, as follows,

> As Judge Learned Hand explained years ago, the admission of evidence that a defendant settled a claim with a third party arising out of the same set of operative facts carries

the inherent risk that "such a concession of liability is almost sure to be taken as an admission of fault." *Paster v. Pennsylvania R.R.*, 43 F.2d 908, 911 (2d Cir.1930). For this reason, even the circuits that construe Rule 408 narrowly view evidence of third party settlements skeptically. As the Tenth Circuit explained in *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir.1997), "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408" (internal citations omitted). We agree.

*Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 699-700 (8th Cir. 2008).

It is not altogether clear from Catipovic's argument what exception, under Rule 408(b), he contends removes the bar to evidence of an attempt to compromise a claim— even a third-party's related claim—pursuant to or consistent with Rule 408(a) and Eighth Circuit case law. Catipovic cites *Dahlgren*, 533 F.3d at 699, for the proposition that "[e]vidence of settlement of separate, third-party claims offered to refute the defendant's claim that it was not liable for plaintiff's claims is not covered under Rule 408." Plaintiff's Brief (docket no. 142), 11. Catipovic overlooks the fact, however, that the Eighth Circuit Court of Appeals then expressly recognized in *Dahlgren* that exactly the same concerns that an offer to compromise will be taken as a concession of liability, to the offering party's prejudice, and may deter settlements, the twin rationales that underlie Rule 408, also apply to offers to compromise made by a litigant to a third party. *See Dahlgreen*, 533 F.3d at 699-700; FED. R. EVID. 408, Advisory Committee Notes (1972 proposed rule). Whether Roland Fagen made the offer to Wendland out of a desire for peace, *see* FED. R. EVID. 408, Advisory Committee Comments (1972 proposed rule), or because he believed that the dollar amount he offered Wendland reflected the value of the services that Wendland (and/or Catipovic) had provided, or because he had doubts

about his liability for misconduct,[2] I conclude that evidence of the offer is not admissible pursuant to *Dahlgren* for the same reasons that an offer to Catipovic would not be admissible pursuant to Rule 408.  *Id.*  Indeed, for much the same reason that Rule 408 bars evidence of offers to compromise to or by a party, I find that the offer to compromise made by Fagen to Wendland, a non-party—if an offer was made and it was, indeed, an offer to compromise—is more prejudicial than probative.  Such evidence would invite the jurors to decide Catipovic's claim against the Fagen Defendants on the improper basis of some perceived correlation between the amount that Roland Fagen purportedly offered Wendland or a perception that the offer is an admission of liability, rather than on the basis of the value of any services provided by Catipovic to the Fagen Defendants.  *See* FED. R. EVID. 403 and Advisory Committee Notes (prejudice included inviting a decision on an improper basis, which may be, but is not necessarily an emotional one); *see also Muhlenbruch*, 634 F.3d at 1001 (same).

Part eight of the Fagen Defendants' Motion In Limine, seeking exclusion of an alleged offer made by Roland Fagen to pay money to Walt Wendland, is granted.

---

[2]I tend to agree with the Fagen Defendants that the deposition testimony of Wendland and Roland Fagen tends to suggest that Fagen offered Wendland money out of a desire for peace, measured by what would recoup Wendland's investment in the Osijek, Croatia, project, not measured by the value of the services that Wendland (or Catipovic) had provided, and not because Fagen had doubts about his liability to Wendland (or Catipovic).  No factfinder need decide the reason or reasons for Fagen's offer to Wendland, however, because none of these reasons for the offer would be admissible pursuant to Rule 408.  Catipovic has not argued, for example, that Fagen's offer of money to Wendland is admissible to show *Wendland's* bias or prejudice, or any other reason that would fall within the Rule 408(b) exception to exclusion.

### 2. The exclusivity agreement between Turley and the Fagen Defendants

#### a. Arguments of the parties

The Fagen Defendants argue that, in his resistance to summary judgment, Catipovic claimed that the Fagen Defendants left his Croatia project in late 2010, because Turley offered them a "better deal," citing an Exclusivity Agreement between Turley and Fagen, Inc., entered into on October 10, 2010. The Fagen Defendants argue, in part ten of their Motion In Limine, that evidence of this Exclusivity Agreement should be excluded, because Catipovic is attempting to use his unjust enrichment claim as a very broad claim for equitable relief from any and all wrongs or inequities that he believes that defendants committed against him. The Fagen Defendants argue that evidence that two of the parties to the original plan to build ethanol plants in Eastern Europe entered into an exclusivity agreement two and a half years after Catipovic allegedly provided his services to them has no relevance to issues related to the unjust enrichment claim that Catipovic has actually brought.

Catipovic counters that the Exclusivity Agreement required the Fagen Defendants to work solely with Turley on ethanol projects in Eastern Europe; that, prior to the Exclusivity Agreement, the Fagen Defendants had continued to work with Catipovic and his partners to develop an ethanol plant in Croatia; and that the Fagen Defendants discontinued their relationship with him at about the time that they entered into the Exclusivity Agreement with Turley. He argues that the Exclusivity Agreement shows that the Fagen Defendants were prevented from working with him, which is directly relevant to whether he suffered a detriment as a result of the defendants' unjust enrichment. He also argues that the Exclusivity Agreement shows that his ability to mitigate his damages was reduced, because he could no longer work with Fagen, Inc.,

the leading builder of ethanol plants. He contends that this evidence is not unduly inflammatory and that any potential prejudice could be cured by a limiting instruction.

In reply, the Fagen Defendants argue that the "detriment" in an unjust enrichment claim concerns whether the defendants were benefitted at the plaintiff's expense or to his detriment. They contend that the Exclusivity Agreement has no relevance to whether Catipovic should have been compensated for the services that he purportedly provided. Rather, they assert that Catipovic's argument for admissibility of this evidence demonstrates how this evidence is likely to confuse or mislead the jurors.

### *b.*    *Analysis*

The Exclusivity Agreement appears to be evidence of the evolution of the relationships among the parties, but, while it may explain why the Fagen Defendants were unwilling or unable to work with Catipovic after October 2010, it is not clear to me how evidence of the Exclusivity Agreement is probative as to any element of Catipovic's claim of unjust enrichment against the Fagen Defendants. It is not directly relevant to the "detriment" at issue on Catipovic's unjust enrichment claim, as Catipovic contends, because, as explained above, beginning at page 16, the "detriment" in question is that Catipovic provided services to the defendants for which he expected and was entitled to receive compensation, but for which he received no such compensation, not that he was prevented from working with the defendants. *See State ex rel. Palmer*, 637 N.W.2d at 154-55; *Lakeside Feeders, Inc.*, 666 F.3d at 1112; *Waldner*, 618 F.3d at 848. It also is not clear to me how evidence that one of the defendants was unwilling or unable to work with the plaintiff is probative of whether or not the plaintiff mitigated his damages from failure of his relationship with the defendants. Mitigation of damages would have involved diligently seeking a replacement opportunity or pursuing options *with others*, not with one of the defendants. *See, e.g., Greenwood v. Mitchell*, 621 N.W.2d 200, 205 (Iowa 2001) (explaining that mitigation of damages involves something that the plaintiff

could reasonably do, under the circumstances, to reduce his or her loss from the defendant's conduct); *Whewell v. Dobson*, 227 N.W.2d 115, 120 (Iowa 1975) (mitigation of damages requires the plaintiff to act with "reasonable diligence" to reduce injury caused by the defendant's conduct); *Bushman v. Cuckler Bldg. Sys.*, 421 N.W.2d 145, 149 (Iowa Ct. App. 1988) (mitigation of damages requires reasonable diligence to pursue other available options to the relationship with the defendants).

Even if somehow probative of a material issue here, I agree with the Fagen Defendants that any probative value of the evidence of the Exclusivity Agreement is outweighed by its potential for undue prejudice. *See* FED. R. EVID. 403. As the Fagen Defendants contend, Catipovic's argument for the probative value of this evidence actually demonstrates the likelihood that it will confuse or mislead the jurors about the nature of the "benefit conferred/detriment suffered" requirements of Catipovic's unjust enrichment claim and may invite the jurors to find in Catipovic's favor on the basis of "misconduct" of the defendants that is not properly at issue on Catipovic's unjust enrichment claim. *Id.* (permitting exclusion of evidence for undue prejudice or because it is misleading or confusing); *see also id.*, Advisory Committee Notes (prejudice includes inviting a decision on an improper basis, which may be, but is not necessarily an emotional one); *Muhlenbruch*, 634 F.3d at 1001 (same).

Therefore, part ten of the Fagen Defendants' Motion In Limine, seeking exclusion of evidence of the October 2010 Exclusivity Agreement between Turley and Fagen, Inc., is granted.

### 3.     *References to filing of or rulings on pretrial motions.*

In part eleven of their Motion In Limine, the Fagen Defendants seek exclusion of any references to the filing of or rulings on pretrial motions. Catipovic does not resist this part of the Fagen Defendants' Motion and, indeed, I would have imposed this bar in any event.

Therefore, part eleven of the Fagen Defendants' Motion In Limine is granted.

## III.     CONCLUSION

Upon the foregoing,

1.      Defendant Turley's February 28, 2014, Motion In Limine (docket no. 131) is **granted in part and denied in part**, as follows:

      a.      Part one of Turley's Motion, seeking exclusion of the testimony or opinions of Catipovic's expert, Michael Ott, is **denied**, and Mr. Ott's opinions and testimony consistent with his amended and supplemented expert report are admissible;

      b.      Part two of Turley's Motion, seeking exclusion of evidence of lost profits is **denied** to the extent that it seeks exclusion of testimony regarding future lost profits for the Dunafoldvar Ethanol Facility, but **granted** to the extent that it seeks exclusion of testimony regarding future lost profits of the Osijek, Croatia, ethanol project;

      c.      Part three of Turley's Motion, seeking exclusion of any reference to Fergus Murphy's travel restrictions, is **granted**;

      d.      Part four of Turley's Motion, seeking exclusion of references to unpleaded claims, is **granted** to the extent that Catipovic is not allowed to refer to "fraud," "conspiracy," or "collusion," or similar characterizations, but **ruling is reserved** as to the relevance and admissibility of any particular *evidence* of the conduct and relationship of the parties;

      e.      Part five of Turley's Motion, seeking exclusion of undisclosed damages, is **denied** *without prejudice* to reassertion, if Catipovic makes no additional disclosures concerning calculations and theories of damages not already

disclosed or offers at trial calculations or theories of damages not properly disclosed;

      f.      Part six of Turley's Motion, seeking exclusion of evidence of his wealth, relative wealth, or financial condition is **granted**;

      g.      Part seven of Turley's Motion, seeking exclusion of settlement discussions, is **granted**;

      h.      Part eight of Turley's Motion, seeking exclusion of evidence regarding correspondence between Walt Wendland and Mark Turley dated October 24, 2012, is **denied**, and the October 24, 2012, letter from Turley to Wendland will be admissible, subject to the limiting instructions described herein.

2.      Plaintiff Catipovic's February 28, 2014, Motion In Limine (docket no. 132) is **granted in part and denied in part**, as follows:

      a.      Part one of Catipovic's Motion, seeking exclusion of any mention that he has not called to testify at trial any witness equally available to the defendants, is **granted as unresisted**;

      b.      Part two of Catipovic's Motion, seeking exclusion of evidence of any attempts or efforts by him to settle or any settlement discussions or negotiations entered into by him, or any conduct by him during such negotiations, is **granted**;

      c.      Part three of Catipovic's Motion, seeking exclusion of any testimony or statements by an expert who has not been designated as a fact witness, or who has no personal knowledge of the events in question to provide factual testimony concerning the events relating to or giving rise to this lawsuit, that draws inferences regarding the facts or events relating to or giving rise to this lawsuit, is **denied**;

d.     Part four of Catipovic's Motion, seeking exclusion of any lay or expert testimony that purports to opine as to the credibility of any witness or party, is **granted** as to purported expert opinions about the credibility of any party or witness, except to the extent that it is made clear to the jury that the expert is offering the opinion as a lay fact witness, but **denied** *without* prejudice to reassertion at trial as to any lay opinion as to the credibility of any party or witness, including any lay opinion on this subject offered by an expert witness;

e.     Part five of Catipovic's Motion, seeking exclusion of opinions, statements, or testimony by any expert witness for the defendants other than those disclosed in discovery, is **granted as unresisted**;

f.     Part six of Catipovic's Motion, seeking exclusion of any exhibit or witness not previously disclosed to the plaintiff through the defendants' disclosures or discovery responses in this matter, is **granted as unresisted**;

g.     Part seven of Catipovic's Motion, seeking exclusion of any statements or reports made or drafted by any person not present to testify or not subject to cross-examination on the contents of such statement or report, is **denied** as premature;

h.     Part eight of Catipovic's Motion, seeking exclusion of any suggestion to the jury, by argument or otherwise, as to what would have been the testimony of any witness not actually called to testify, is **granted as unresisted**;

i.     Part nine of Catipovic's Motion, seeking exclusion of any demands or requests before the jury for items from him which have not been the subject of discovery in this case, is **denied** as premature;

j.     Part ten of Catipovic's Motion, seeking exclusion of evidence that he has been involved in other lawsuits prior or subsequent to this lawsuit, is **granted as unresisted**;

k. Part eleven of Catipovic's Motion, seeking exclusion of evidence that he has been a party to other unrelated claims or settlements made either prior or subsequent to this lawsuit, or the amount sought or paid therein, is **granted as unresisted**;

l. Part twelve of Catipovic's Motion, seeking exclusion of his financial condition, including information and documents relating to his financial statements and income tax returns, is **granted**;

m. Part thirteen of Catipovic's Motion, seeking exclusion of testimony by any expert or fact witness on behalf of the defendants regarding the financial performance of the ethanol plant in Dunafoldvar, Hungary, to the extent that the information is based on financial information/documents not disclosed in the course of discovery, is **denied** *without prejudice* to reassertion if such evidence is presented at trial.

3. The Fagen Defendants' February 28, 2014, Motion In Limine (docket no. 133) is **granted in part and denied in part**, as follows:

a. Part one of the Fagen Defendants' Motion, seeking exclusion of the testimony or opinions of Catipovic's expert, Michael Ott, is **denied**, and Mr. Ott's opinions and testimony consistent with his amended and supplemented expert report are admissible;

b. Part two of the Fagen Defendants' Motion, seeking exclusion of reference to finder's fees or other measures of damages not identified by Catipovic in discovery responses or Initial Disclosures, is **denied**, *without prejudice* to reassertion if Catipovic makes no additional disclosures concerning calculations and theories of damages not already disclosed or offers at trial calculations or theories of damages not properly disclosed;

c.     Part three of the Fagen Defendants' Motion, seeking exclusion of any reference to the profit or net income that Fagen, Inc., or any Fagen related entity received or earned on the construction of the Dunafoldvar, Hungary, ethanol plant, is **granted**;

d.     Part four of the Fagen Defendants' Motion, seeking exclusion of Roland Fagen's personal financial statements, is **granted**;

e.     Part five of the Fagen Defendants' Motion, seeking exclusion of the relative wealth of the parties or the financial status of Roland Fagen or Fagen, Inc., is **granted**;

f.     Part six of the Fagen Defendants' Motion, seeking exclusion of settlement discussions between the parties, is **granted**;

g.     Part seven of the Fagen Defendants' Motion, seeking exclusion of evidence regarding correspondence between Walt Wendland and Mark Turley dated October 24, 2012, is **denied**, and the October 24, 2012, letter from Turley to Wendland will be admissible, subject to the limiting instructions described herein;

h.     Part eight of the Fagen Defendants' Motion, seeking exclusion of an alleged offer made by Roland Fagen to pay money to Walt Wendland, is **granted**;

i.     Part nine of the Fagen Defendants' Motion, seeking exclusion of unpleaded claims, including references to a conspiracy or any references to Fagen or any Fagen entity breaching any agreement with Catipovic or Walt Wendland or circumventing Catipovic, is **granted** to the extent that Catipovic is not allowed to refer to "fraud," "conspiracy," "collusion," or, as to the Fagen Defendants, "breach" of any agreement, or similar characterizations, but **ruling is reserved** as to the relevance and admissibility of any particular *evidence* of the conduct and relationship of the parties;

j.      Part ten of the Fagen Defendants' Motion, seeking exclusion of any reference to an Exclusivity Agreement between Mark Turley and Fagen, Inc., dated October 21, 2010, is **granted**;

k.      Part eleven of the Fagen Defendants' Motion, seeking exclusion of any reference to filings or rulings on pretrial motions, is **granted**.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 18th day of April, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA